The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ballance. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except with the modification of the amount of permanent partial disability compensation due plaintiff.
**********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Form 21 Agreement for Payment of Compensation and the Pre-trial Agreement as:
STIPULATIONS
Following the hearing, the parties submitted a package of stipulated medical records on 23 June 1994 which have been marked as Stipulated Exhibit No. 1. At that time, the parties also stipulated and provided to the Industrial Commission a payment history of plaintiff's workers' compensation benefits.
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The date of injury is 15 January 1992.
3. An employer-employee relationship existed on 15 January 1992 between plaintiff and defendant-employer.
4. Defendant-employer was insured for workers' compensation by Wausau Insurance Companies on 15 January 1992.
5. Plaintiff's average weekly wage on 15 January 1992 was $360.71, yielding a compensation rate of $240.49.
6. The carrier-defendant made payment of temporary total disability benefits to the plaintiff from 16 January 1992 to 10 March 1992. Plaintiff received temporary partial disability benefits at various rates from 10 March 1992 through 17 April 1992. A Form 26 supplemental agreement for payment of temporary partial disability was approved by the Industrial Commission on 10 April 1992.
***********
The Full Commission adopts and modifies the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant on 15 January 1992 when a heavy equipment buggy weighing approximately 800 pounds tipped over on top of her pinning her arms and part of her body under the buggy. This claim was accepted as compensable pursuant to a Form 21 agreement which was approved by the Industrial Commission on 1 April 1992.
2. Plaintiff was first seen by Dr. Donald Campbell on 17 January 1992 complaining of pain in the hands, arms and forearms. Dr. Campbell did not identify any fractures in plaintiff's hands. He diagnosed severe contusions to the hands and a laceration of the right thumb. Dr. Campbell placed plaintiff in bulky dressing and recommended that she elevate her hands, use ice, and return to him in a week. Plaintiff was also given anti-inflammatory and pain medication. Plaintiff was taken out of work on this date. Plaintiff continued treatment with Dr. Campbell seeing him on 21 January 1992, 27 January 1992 and 30 January 1992. At the 30 January 1992 visit, plaintiff began to complain of pain in the right shoulder and numbness of the left hand. Dr. Campbell started plaintiff on occupational therapy. By 3 March 1992, Dr. Campbell had released plaintiff to return to light duty work with no lifting over five pounds. Plaintiff also showed some signs of reflex sympathetic dystrophy. Plaintiff returned to work for defendant-employer on 10 March 1992.
3. Following her release to light duty work, plaintiff returned to Dr. Campbell on 20 March 1992 complaining of pain in the right shoulder, left-sided back pain, right-sided hip pain, swelling in the elbow and forearm. Dr. Campbell examined plaintiff and noted that she had good function in her hands, excellent range of motion except the left thumb on the left hand, no limitation of motion on the right and numbness of the left hand. Dr. Campbell recommended that plaintiff work four hours a day for two weeks, increase to six hours per day for two weeks, followed by a return to work of eight hours per day to build up her endurance. Plaintiff was to remain on light duty work with no lifting of more than five pounds.
4. Plaintiff returned to light duty work on 10 March 1992. At that time, she returned to work on the first shift. At the time she was injured, plaintiff had worked third shift. With the exception of the $.35 per hour shift differential, plaintiff returned to work earning the same or greater wages than she was earning at the time of her accident. Thereafter, plaintiff was able to do the job of line operator with restrictions of no lifting over 15 pounds and with breaks.
5. As of 17 April 1992, plaintiff had returned to wages equal to or greater than those she was receiving before her injury.
6. By letter from her attorney dated 21 April 1992, plaintiff filed a request for change in physician with the Industrial Commission. Defendant-carrier refused to agree in a letter dated 31 July 1992. Plaintiff was referred to Dr. Gary Poehling by her attorney. Dr. Poehling's initial examination on 18 May 1992 revealed some weakness on the right, tenderness in the shoulder and elbow, pain in wrist upon extension, some loss of sensation and tenderness on the left and difficulty sleeping. Dr. Poehling recommended that plaintiff undergo tests to rule out reflex sympathetic dystrophy. A nerve conduction study and EMG showed no evidence of any nerve compression. A bone scan was reported as normal. The isolated cold stress test was also normal. Dr. Poehling diagnosed plaintiff with reflex sympathetic dystrophy based on his examination and her complaints of pain.
7. Plaintiff timely filed a request for change of physician. The treatment provided to plaintiff by Dr. Poehling was reasonably required to effect a cure, provide relief and/or lessen her period of disability and should be authorized.
8. Plaintiff returned to Dr. Campbell on 15 May 1992. Dr. Campbell released plaintiff to return to the job of line operator. On 3 June 1992, Dr. Campbell examined plaintiff and noted that her examination was essentially normal. At that time, plaintiff requested that she be allowed to perform overtime work. Dr. Campbell allowed plaintiff to work overtime.
9. In his note of 5 March 1993, Dr. Campbell set forth his course of treatment of plaintiff up to that date. Dr. Campbell stated that plaintiff had had multiple complaints at various times, including complaints to her shoulder and back. However, Dr. Campbell noted that all of the objective testing that he had performed on plaintiff had been normal. By 3 June 1992, less than six months after the accident, plaintiff had a normal and full range of motion of both hands. Plaintiff could work a full eight-hour day with a 15 minute break in the morning and evening, a 30 minute break at lunch, and a lifting restriction of 15 pounds.
10. On 6 August 1992, plaintiff was laid off from her job with defendant-employer for reasons unrelated to her workers' compensation claim.
11. Plaintiff held herself out as ready, willing, and able to accept employment from August 1992 through July 1993 by accepting unemployment benefits.
12. Plaintiff reached maximum medical improvement on her right arm in August 1993 and has a thirty-three percent (33%) permanent partial impairment to her right arm arising from her compensable injury.
13. Plaintiff reached maximum medical improvement of her left arm on 4 April 1994 and retains a ten percent (10%) permanent partial impairment of the left arm as a result of her compensable injury.
**********
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 15 January 1992, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer.
2. As a result of the injury by accident plaintiff was temporarily totally disabled and was entitled to receive temporary total disability compensation at the rate of $240.49 per week for the period from 15 January 1992 through 9 March 1992. N.C. Gen. Stat. 97-29. Pursuant to the stipulated payment history, this amount has already been paid to plaintiff.
3. As a result of the injury by accident plaintiff was temporarily partially disabled and is entitled to receive temporary partial disability compensation for the period from 10 March 1992 through 16 April 1992. N.C. Gen. Stat. 97-30. This compensation has already been paid in varying amounts to plaintiff.
4. As a result of her injury, plaintiff is entitled to permanent partial disability compensation at the rate of $240.49 per week for 79 weeks for the thirty-three percent (33%) permanent partial impairment to her right arm and permanent partial disability compensation at the rate of $240.49 per week for 24 weeks for the ten percent (10%) permanent partial impairment to her left arm. N.C. Gen. Stat. 97-31 (13).
5. As of 17 April 1992, plaintiff had returned to wages equal to or greater than those she was receiving before her injury. This created a rebuttable presumption that her disability had ended. Watkins v. Motor Lines, 279 N.C. 132, 181 S.E.2d 588
(1971); N.C. Gen. Stat. 97-2 (9). Furthermore, plaintiff then held herself out as ready, willing, and able to accept employment from August 1992 through July 1993 by accepting unemployment benefits.
6. Plaintiff is entitled to compensation for all medical expenses incurred or to be incurred as a result of her admitted compensable injuries. N.C. Gen. Stat. 97-25.
7. The medical evaluations and treatment provided to plaintiff by Dr. Poehling were reasonably required to effect a cure, provide relief or to lessen her period of disability and they are hereby APPROVED.
**********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms and modifies the holding of the Deputy Commissioner and enters the following:
AWARD
1. Subject to an attorney's fee, defendants shall pay to plaintiff in one lump sum without commutation compensation at the rate of $240.49 per week for 103 weeks for the thirty-three percent (33%) permanent partial impairment to her right arm combined with the ten percent (10%) permanent partial impairment to her left arm.
2. Defendants shall pay for all medical expenses incurred or to be incurred as a result of plaintiff's compensable injury to the extent that such examinations, evaluations and treatments are reasonably required to effect a cure, provide relief and/or to lessen plaintiff's disability when bills for same are submitted through defendant-carrier to the Industrial Commission and approved. The approved medical expenses include treatment provided by Dr. Poeling.
3. A reasonable attorney's fee of twenty-five percent of the amount due plaintiff pursuant to this Award is hereby approved for plaintiff's counsel and shall be deducted and paid directly to his counsel.
4. Defendants shall pay the costs due this Commission.
 S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ __________________ DIANNE C. SELLERS COMMISSIONER
S/ __________________ GEORGE T. GLENN, II DEPUTY COMMISSIONER