J. R. WATKINS, EMPLOYEE v. CENTRAL MOTOR LINES, INC., EMPLOYER, AND MICHIGAN MUTUAL LIABILITY, CARRIER

No. 103

(Filed 10 June 1971)

1. **Master and Servant § 77— workmen's compensation — claim for permanent disability — change of condition**

    Plaintiff's claim for permanent partial disability involved a "change of condition" and was barred by G.S. 97-47, where the claim was made more than one year after the employee's receipt of final compensation payment for temporary disability and his execution of Industrial Commission Form 28B closing the case.

2. **Master and Servant § 69— workmen's compensation — disability defined**

    The term "disability," as used in the Workmen's Compensation Act, means incapacity because of injury to earn, in the same or any other employment, the wages which the employee was receiving at the time of injury. G.S. 97-2(9).

3. **Master and Servant § 69— workmen's compensation — length of disability — presumptions**

    There is a presumption that disability lasts until the employee returns to work and likewise a presumption that disability ends when the employee returns to work at wages equal to those he was receiving at the time his injury occurred.

4. **Master and Servant § 77— employee's claim for permanent disability — misrepresentations by employer — findings of fact**

    Employee's evidence was sufficient to require the Industrial Commission to make findings of fact as to whether the employee was misled to his prejudice when his employer's workmen's compensation agent

misrepresented to him that the signing of Form 28B closing the employee's payments for temporary disability would not affect the employee's later claim for permanent disability.

APPEAL by plaintiff as of right under G.S. 7A-30(2) from decision of the Court of Appeals upholding award of the North Carolina Industrial Commission denying further compensation, 10 N.C. App. 486.

The facts pertinent to decision of this case appear in the numbered paragraphs below.

1. On 19 May 1967 plaintiff was injured in a truck accident in Indiana under compensable circumstances.

2. On 2 June 1967 defendants admitted liability, the parties executed Industrial Commission Form 21, and the compensation carrier paid plaintiff compensation at the rate of $37.50 per week for temporary total disability from 20 May 1967 to 1 January 1968 in the total sum of $1216.08.

3. On 18 January 1968 plaintiff received the last of his weekly compensation payments and signed a final receipt on Industrial Commission Form 28B, which contains the following pertinent provisions: "14. Does This Report Close the Case—including final compensation payment? Yes—Except for med. . . . NOTICE TO EMPLOYEE: If the answer to Item No. 14 above is 'Yes,' this is to notify you that upon receipt of this form your compensation stops. If you claim further benefits, you must notify the Commission in writing within one (1) year from the date of receipt of your last compensation check."

4. Plaintiff returned to work on 2 January 1968 at the same wages he was earning when his injury occurred. At that time he was still being seen periodically by his physician and had not been released. On 19 March 1968, Dr. Richard H. Ames of Greensboro, who had been treating plaintiff during his period of temporary total disability, examined plaintiff and reported that he had not yet reached maximum improvement and that plaintiff was to return after six months for possible rating of his permanent partial disability. On 12 September 1968 Dr. Ames examined plaintiff and reported that he had improved, that no treatment was "indicated at this time," and that he planned to see plaintiff in six months for "further follow-up." (A copy of these reports was sent to the Compensa-

tion Carrier.) On 29 November 1968 Dr. Ames again examined plaintiff and reported that he planned to rate plaintiff for final disposition in March of 1969. (A copy of this report was transmitted to the employer.) On 8 May 1969 Dr. L. U. Anthony, who practiced with Dr. Ames, examined plaintiff and reported he had a twenty percent permanent partial disability of the right arm due to the injuries sustained in the Indiana accident. (A copy of this report was sent to the Compensation Carrier.) On 18 June 1969 plaintiff filed with the Industrial Commission on I.C. Form 33 a request for a hearing with respect to compensation for his permanent partial disability.

5. Defendants denied further liability to plaintiff for that more than one year had elapsed between the last payment of compensation and plaintiff's request to the Industrial Commission for further hearing. A hearing was held before Deputy Commissioner Thomas on 29 August 1969 at which plaintiff appeared without counsel. At plaintiff's request, the hearing was continued until plaintiff could arrange for representation. He employed his present counsel and a hearing was thereafter held before Deputy Commissioner Thomas on 13 February 1970. At that hearing plaintiff offered medical evidence of his permanent partial disability (Plaintiff's Exhibits 16 and 17) and then testified that in early January 1968, Al Hinnant, the log clerk for Central Motor Lines, Inc., asked him to sign an Industrial Commission form; that no one was present at the time except plaintiff, Robert Eller and Al Hinnant; that "Mr. Hinnant asked me to sign this form, said that it was—that I would receive it in my last check on weekly benefits, and I asked him if that was what it was and he said yes, that all it meant that I had a year to re-open this case if I wanted more weekly benefits; if I wanted to go back on weekly benefits. I asked him something about permanent disability payments and he said that this had really nothing to do with that because that would be left up to when the doctors released and rated me."

Robert Eller testified that during the day or evening of 18 January 1968, "Mr. Watkins and I went to the log clerk's office at which time Mr. Watkins had a conversation with Mr. Hinnant. We went down to go out and Mr. Hinnant called us in his office and he gave a paper to Mr. Watkins to sign and Mr. Watkins told him that he had not been released or rated yet on the disability, and Mr. Hinnant said, 'Well, this is just

to show the Industrial Commission that you have been receiving your weekly benefits,' so he signed it. Mr. Hinnant didn't say anything to Mr. Watkins about any permanent injury. He said if he wanted to renew his weekly benefits, why, he had a year's time to do it in. Mr. Parrish was not present during that conversation; just me and Mr. Watkins and Mr. Hinnant."

Albert C. Hinnant, a witness for defendants, testified that he was employed by Central Motor Lines in the capacity of Log Control Clerk, a position he has held since 15 July 1967. "In January, 1968, I did not have any connection with the handling of Workmen's Compensation papers for Central Motor Lines because that's before I began handling the papers. I started handling the papers some time in early spring of 1968. I would say in May because—having them signed, witnessed and seeing that the men received their payments. It is correct that I heard Mr. Watkins' testimony concerning an alleged conversation with me in January, 1968, concerning this Form 28B. I did not have any conversation with Mr. Watkins in January, of 1968, with reference to this Form 28B. Mr. Parrish was handling the Workmen's Compensation paper work at that time at the terminal; that is, Mr. George Parrish. I have had conversations with Mr. Watkins concerning a Form 28B but that was in early 1969, I'd say in February or March."

George C. Parrish, a witness for defendants, testified that he had been Chief Dispatcher for Central Motor Lines for five years; that during January of 1968 he was handling final Workmen's Compensation payments and execution of Form 28B by employees under his supervision; that he signed in the capacity of witness the Form 28B in question; that he had never witnessed a Form 28B when he did not see an employee sign it, although he does not recall specifically "what happened on the occasion when this was signed."

6. Based upon certain stipulations concerning which there is no dispute and upon the foregoing evidence, Deputy Commissioner Thomas made findings of fact and concluded as a matter of law that plaintiff's claim for further compensation for the twenty percent permanent partial disability of his arm was barred by the provisions of G.S. 97-47. Plaintiff appealed to the Full Commission assigning as errors: (1) failure of the Deputy Commissioner to make a finding of fact concerning the circumstances under which plaintiff signed Form 28B on 18

January 1968, (2) the conclusion of law that plaintiff's claim for permanent disability payments is barred and (3) denial of the claim. The Full Commission adopted the findings of fact and conclusions of law of Deputy Commissioner Thomas and affirmed the result reached by him. Plaintiff appealed to the Court of Appeals and that court affirmed the Full Commission, with Vaughn, J., dissenting. Plaintiff thereupon appealed to the Supreme Court assigning errors noted in the opinion.

*Douglas, Ravenel, Hardy & Crihfield by G. S. Crihfield, for plaintiff appellant.*

*Robert L. Scott for defendant appellees.*

HUSKINS, Justice.

Is plaintiff's permanent partial disability a "change in condition" within the meaning of G.S. 97-47? If so, are defendants estopped to plead the statute in bar of plaintiff's claim for additional compensation? Answers to these questions are determinative on this appeal.

[1] Where a claimant suffers an injury that results in temporary total disability followed by a specific disability compensable under G.S. 97-31, compensation for the specific disability is payable in addition to that awarded for temporary total disability. *Rice v. Panel Co.,* 199 N.C. 154, 154 S.E. 69 (1930). Plaintiff contends he is thus entitled to additional compensation for forty-four weeks to cover the twenty percent permanent partial disability of his right arm—a specific disability under G.S. 97-31(13). Defendants contend his claim for additional compensation is barred by G.S. 97-47 because (1) the claim arises from a change in plaintiff's condition and (2) he failed to notify the Industrial Commission and make claim for it within twelve months from the date on which he received the last payment of compensation for his temporary total disability. These conflicting contentions require us to decide whether, on the facts in this case, plaintiff's permanent partial disability is a "change in condition" within the meaning of G.S. 97-47.

G.S. 97-47, in pertinent part, provides: "Upon its own motion or upon the application of any party in interest on the grounds of a change of condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously

awarded, subject to the maximum or minimum provided in this article, and shall immediately send to the parties a copy of the award. No such review shall affect such award as regards any moneys paid but no such review shall be made after twelve months from the date of the last payment of compensation pursuant to an award under this article . . . . " The Commission's authority under this statute is *limited to review of prior awards,* and the statute is inapplicable in instances where there has been no previous final award. *Biddix v. Rex Mills,* 237 N.C. 660, 75 S.E. 2d 777 (1953) ; *Pratt v. Upholstery Co.,* 252 N.C. 716, 115 S.E. 2d 27 (1960). In such cases, jurisdiction is retained by and remains in the Commission pending a termination of the case by final award. *Branham v. Panel Co.,* 223 N.C. 233, 25 S.E. 2d 865 (1943). No statute runs against a litigant while his case is pending in court. *Hanks v. Utilities Co.,* 210 N.C. 312, 186 S.E. 252 (1936).

[2, 3] The term "disability," as used in the Workmen's Compensation Act, means incapacity because of injury to earn, in the same or any other employment, the wages which the employee was receiving at the time of injury. G.S. 97-2(9). If an award is made by the Industrial Commission, payable during disability, there is a presumption that disability lasts until the employee returns to work and likewise a presumption that disability ends when the employee returns to work at wages equal to those he was receiving at the time his injury occurred. *Tucker v. Lowdermilk,* 233 N.C. 185, 63 S.E. 2d 109 (1951).

[1] Here, plaintiff returned to work for the same employer on 2 January 1968 at the same wage he was receiving prior to his injury. He has worked continuously since that time and lost no wages. On 18 January 1968 he received his last weekly compensation payment for the period during which he was disabled. He signed and received a copy of Form 28B which by its terms *closed the case* (except for medical). That Form notified him that he would receive no further compensation payments and that if he claimed further benefits he must notify the Commission in writing within one year from date of receipt of his last compensation check. Form 28B was duly filed with the Commission. Thus, plaintiff's disability due to his injury presumptively ended on 18 January 1968. Nothing in the medical reports up to that time indicated any permanent partial disability. In a medical report dated 29 July 1967 (Plaintiff's Exhibit 8), Dr.

Hickman of Fort Wayne, Indiana, stated that plaintiff's accident had not resulted in any permanent disability. If any of the parties anticipated at that time that plaintiff would not fully recover and that his injury would result in permanent partial disability, such fact is not reflected in the medical reports or in the Commission's findings of fact. Hence, the case was closed. "A closing receipt purports to be a final settlement and indicates that no further compensation will be paid unless request for hearing for change of condition is made within a year from date of the receipt." *Pratt v. Upholstery Co., supra* (252 N.C. 716, 115 S.E. 2d 27). Any change in plaintiff's physical condition thereafter, entitling him to additional compensation under the Act, was a "change in condition" within the meaning of that term as used in G.S. 97-47 and required him to apply to the Industrial Commission on or before 18 January 1969 for review of its previous award. "Where the harmful consequences of an injury are unknown when the amount of compensation to be paid has been determined by agreement but subsequently develops, the amount of compensation to which the employee is entitled can be redetermined within the statutory period for reopening. It is a 'change in condition' as the term is used in the statute." *Smith v. Red Cross*, 245 N.C. 116, 95 S.E. 2d 559 (1956). "The fact that the change necessitates making an award in an entirely different category, as when an original award was one of temporary benefits for time loss and the award on reopening would be for total permanent disability, is no obstacle to reopening." Larson, Workmen's Compensation, § 81.31. So it is here. We hold that plaintiff's evidence shows a change in condition and G.S. 97-47 applies.

The agreement between the parties on Form 21, approved by the Commission on 16 June 1967, provided for payment of compensation at the rate of $37.50 per week "for necessary weeks." This constituted an award by the Commission enforceable, if necessary, by a court decree. G.S. 97-87; *Biddix v. Rex Mills, supra.* This was followed by the execution and filing of Form 28B closing the case on 18 January 1968 when plaintiff received his last payment of compensation pursuant to that award. Seventeen months elapsed before plaintiff filed Form 33 with the Commission requesting a hearing and further award of compensation on account of his permanent partial disability. This comes too late unless defendants are estopped to plead the lapse of time. *Lee v. Rose's Stores, Inc.*, 205 N.C. 310, 171 S.E.

Watkins v. Motor Lines

87 (1933); *Smith v. Red Cross, supra; Ammons v. Sneeden's Sons, Inc.,* 257 N.C. 785, 127 S.E. 2d 575 (1962); *White v. Boat Corp.,* 261 N.C. 495, 135 S.E. 2d 216 (1964).

[4] We now turn to the question of estoppel. Plaintiff contends defendants are estopped to plead the lapse of time by reason of misrepresentations made to him by A. C. Hinnant, employer's agent in charge of Workmen's Compensation claims, at the time he signed Form 28B closing his case. Plaintiff argues that Hinnant's statements not only induced him to sign the form but also lulled him into believing that the lapse of time following the last payment of compensation would not affect his right to receive additional compensation for permanent partial disability—"that would be left up to when the doctors released and rated me."

"The law of estoppel applies in compensation proceedings as in all other cases." *Biddix v. Rex Mills, supra.* In *McNeely v. Walters,* 211 N.C. 112, 189 S.E. 114 (1937), Chief Justice Stacy, speaking for the Court, said: "The doctrine of equitable estoppel is based on an application of the golden rule to the everyday affairs of men. It requires that one should do unto others as, in equity and good conscience, he would have them do unto him, if their positions were reversed. . . . Its compulsion is one of fair play."

Actual fraud, bad faith, or an intent to mislead or deceive is not essential to invoke the equitable doctrine of *estoppel in pais. Oliver v. Fidelity Co.,* 176 N.C. 598, 97 S.E. 490 (1918); *Waugh v. Lennard,* 69 Ariz. 214, 211 P. 2d 806 (1949). "It is sufficient for this purpose that the debtor made misrepresentations which misled the creditor, who acted upon them in good faith, to the extent that he failed to commence action within the statutory period." 51 Am. Jur. 2d, Limitation of Actions, § 433. *Accord, Schroeder v. Young,* 161 U.S. 334, 40 L. Ed. 721, 16 S. Ct. 512 (1896). Such tolling of the statute may result from the honest but entirely erroneous expression of opinion as to some significant legal fact. Larson, Workmen's Compensation, § 81.51; *Waugh v. Lennard, supra;* Annotation, Estoppel to rely on statute of limitations, 24 A.L.R. 2d 1413 (1952). Justice Higgins, speaking for the Court in *Nowell v. Tea Co.,* 250 N.C. 575, 108 S.E. 2d 889 (1959), aptly expressed the doctrine in this language: "The lapse of time, when properly pleaded, is a technical legal defense. Nevertheless, equity will deny the right to assert that defense when delay has been induced by acts, representations, or conduct, the repudiation of which would amount

to a breach of good faith." *Accord, Ammons v. Sneeden's Sons, Inc., supra.*

No facts were found relative to the question of estoppel. Plaintiff's evidence on that question was sufficient to require the Industrial Commission to find the facts with respect thereto and, upon such findings, to determine whether defendants are estopped to plead the lapse of time by reason of plaintiff's reliance on the employer's representations, "the repudiation of which would amount to a breach of good faith." If defendants are not estopped, the case is closed. If estopped, the Commission is required to consider the evidence in the record, and any additional pertinent evidence either party may desire to offer, and determine whether a further award is justified for change in condition, and, if so, the amount thereof.

The decision of the Court of Appeals is reversed. The case will be remanded by that court to the North Carolina Industrial Commission for disposition in accordance with this opinion.

Reversed and remanded.