"If an award is made by the Industrial Commission, payable during disability, there is a presumption that disability lasts until the employee returns to work and likewise a presumption that disability ends when the employee returns to work at wages equal to those he was receiving at the time his injury occurred. Tucker v.Lowdermilk, 233 N.C. 185, [189,] 63 S.E.2d 109 (1951) [referencing Industrial Commission Rule #13 (1935)]." Watkins v. Central MotorLines, Inc., 279 N.C. 132, 137, 181 S.E.2d 588 (1971), Huskins, Justice
(and former Commission Chairman). Following the period of admitted disability, plaintiff was employed and earning the same wages she had prior to the injury.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner, or subsequent thereto, as:
STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. At all times relevant to this claim plaintiff was an employee of defendant-employer TW Services/Hardees.
3. Defendant-employer was self-insured for workers' compensation.
4. The injury giving rise to this claim occurred on July 25, 1992.
5. On July 25, 1992, plaintiff's average weekly wage was $180.00.
6. The Form 19 dated 7-31-92.
7. Medical records from Dr. Anthony Wheeler of Charlotte Orthopaedic Specialists from December 23, 1994 through April 4, 1995 [may be received in evidence].
8. Records from Cleveland County Physical Therapy from December 28, 1994 through February 28, 1995, including the Functional Capacity Examination of April 3, 1995 and Letter of Theresa Zehnbauer of April 13, 1995 [may be received in evidence].
9. Medical records of Dr. John Hamrick, Jr. of Cleveland Orthopaedic Associates dated June 28, 1993 [may be received in evidence].
10. Medical records of Dr. Gary Mangum dated August 20, 1993 [may be received in evidence].
11. Teresa Black returned to work on April 7, 1995 to perform a job that met guidelines set out in the aforementioned Functional Capacity Examination.
* * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following additional:
FINDINGS OF FACT
1. Plaintiff was born on March 8, 1959. She graduated from high school in 1977. Plaintiff is married and has three children.
2. Prior to working for defendant, plaintiff had worked at a grocery store as a cashier, and at Dixie News in accounts receivable. She had not worked outside the home from sometime in 1982 until late 1990, but had stayed home.
3. Plaintiff began working as a customer relations person at the Hardees in Boiling Springs around March 1992. Her duties included waiting on customers and running the registers. On July 25, 1992, since the ice machine was broken, plaintiff was sent to a local Ingles grocery store to get ice. She returned with around twenty-five 10 pound bags of ice. Plaintiff alleges that her back was injured while loading and unloading the ice. Although the defendant's accepted this as a compensable claim, testimony at the hearing which contradicts plaintiff casts doubt on her version of the events surrounding her injury.
4. On July 25, 1992, when plaintiff returned to Hardees with the bags of ice, Dennis Puckerin, who was assistant manager at Hardees and also a supervisor over plaintiff, came out. Puckerin and another employee, Brandon, started unloading the ice from plaintiff's car. After Puckerin had made 2 or 3 trips and about half of the ice had been unloaded, he was called away by the General Manager to assist with customers because they were very busy. Plaintiff's contradictory testimony that she unloaded all the ice while Puckerin stood around and watched is not accepted as credible, based on the Deputy Commissioner's evaluation of the witnesses.
5. Plaintiff was seen by James K. Jordan, D.C. on July 29, 1992 with complaints of lower back pain. Plaintiff had previously been seen by Dr. Jordan, primarily from July 31, 1990 through November 28, 1990, with complaints of pain in her wrist, elbows and shoulder, as well as headaches and pain in her legs and feet. Her last two visits prior to July 29, 1992 were on January 17, 1991 and August 14, 1991, when he notes she was doing well.
6. Dr. Jordan's assessment of plaintiff's condition on July 29, 1992 was lumbar strain and he began a program of spinal manipulation and other therapy such as ultrasound and electrical stimulation. Dr. Jordan took plaintiff out of work for an undetermined period of time. He also referred plaintiff for evaluation by Dr. Raymond Sweet, a neurosurgeon.
7. Plaintiff was examined by Dr. Sweet on September 3, 1992. His examination showed some mild tenderness at the SI joint, which is a subjective assessment. Plaintiff's neurological examination was normal. An MRI done on September 28, 1992 was normal, with no evidence of herniated disc or pinched nerve. Dr. Sweet concluded plaintiff had a lumbar sacral strain, for which conservative treatment was appropriate. As of September 30, 1992 he advised plaintiff that she should walk on a regular basis at least 15-20 minutes three times per day and when she improved she should return to light duty.
8. Dr. Sweet last examined plaintiff on December 28, 1992, at which time he believed she had reached maximum medical improvement. He released her to return to work at her regular job at Hardees on January 4, 1993. As found by Dr. Sweet, at that time plaintiff should have been able to perform the regular duties of a customer relations person, the position to which she returned at Hardees, since it was within her physical capabilities. Most people recover from a back strain within a maximum of eight weeks, and plaintiff had been out of work to recover for over five months.
9. On January 5, 1993, plaintiff returned to her position as a customer relations person at Hardees at the same hourly wage as she was earning at the time of her accident. She was able to carry out all her regular duties and did not complain of back pain.
10. On February 4, 1993, plaintiff had to take her husband to work and she had car trouble. Due to these difficulties, on that morning, plaintiff did not report to work for her shift. She did not call in advance to report she would be late or would not be there. When the employer reached her later in the morning, plaintiff reported car trouble. She also told her co-worker and personal friend Beth Barnes that she had car trouble that morning. Plaintiff did not have back problems that day which prevented her from reporting to work and did not see Dr. Jordan that day. Dr. Jordan did not excuse plaintiff from work that day or any other day after her return to work on January 4, 1993.
11. When she spoke with plaintiff on February 4, 1993, Annette Tesnear, the breakfast leader, told plaintiff this was her last warning about being late to work without calling in advance and to either report to work or not come back. Plaintiff otherwise did not get along well with Annette Tesnear, and plaintiff chose to resign. Plaintiff voluntarily left her employment at Hardees because of her difficulty with Tesnear and the disciplinary matter for her failure to report to work and not because of any back pain related to her accident of July 25, 1992.
12. Plaintiff's own testimony at the hearing about the level of her pain is inconsistent and not supported by the Deputy Commissioner's observation of her appearance and behavior at the hearing or otherwise since her accident and therefore is not credible or persuasive. Plaintiff testified that when she was first injured her pain was a level 7 on a scale of 1 to 10 with 10 being the most severe pain. She testified that her pain at the time of hearing was an 11. However, at the hearing, the Deputy Commissioner observed that plaintiff did not appear to be in any distress. As noted by Dr. Sweet, a pain level of 10 indicates unrelenting severe pain as might be experienced by someone with cancer or who had several back surgeries. This level of pain is inconsistent with Dr. Sweet's findings on examining plaintiff.
13. Around February 15, 1993, plaintiff was hired as an assistant manager trainee at Pizza Hut, where she worked until April 25, 1993. On her job application with Pizza Hut, she indicated she left Hardees because she was not given a management position. During her work at Pizza Hut, plaintiff was able to carry out all of her job duties without complaints of pain. On April 25, 1993 plaintiff walked off the job without explanation to the manager. Plaintiff left this job because she wanted a better paying job and not because of any back pain related to her accident of July 25, 1992.
14. Plaintiff then worked weekend shifts at Kemet Electronics from August 20, 1993 until March 6, 1994. This was a light industrial job, in which she dipped trays of computer chips into silver. On her job application, plaintiff stated that she left Pizza Hut because she did not get a promised raise. From January 30, 1994 to May 11, 1994, on the weekdays, plaintiff worked as a waitress at the Italian Garden. She worked around 20 to 30 hours a week as a waitress and carried trays that weighed up to 30 pounds.
15. Plaintiff's work history after she left Hardees shows that her back pain was not significant enough to interfere with her ability to earn wages. She continued to work in jobs that required her to be on her feet and to lift and carry items, such as in her positions as a waitress. Also during this time plaintiff continued to maintain her household, doing housework, washing dishes, grocery shopping, cooking and caring for her three children.
16. From May 11, 1994 until she returned to work on April 7, 1995, plaintiff did not look for work. The evidence does not establish that plaintiff was incapable of earning any wages during this time. Plaintiff's claim that she was unable to work due to pain is not supported by the greater weight of the credible evidence.
17. Dr. Jordan, the chiropractor, agreed with Dr. Sweet that plaintiff was released to return to work on January 4, 1993, at which time she was at maximum medical improvement. Dr. Jordan continued to treat plaintiff's symptoms with chiropractic therapy up through April 2, 1993. It is Dr. Jordan's opinion that plaintiff sustained a five percent permanent impairment of her back.
18. Plaintiff was examined by Dr. John Hamrick, Jr., of Cleveland Orthopaedic Associates on June 28, 1993. Dr. Hamrick was of the opinion that plaintiff had reached maximum medical improvement and sustained a five percent permanent disability of her back.
19. Plaintiff sought a second opinion from Dr. Gary Mangum in Shelby who saw her on August 20, 1993. Dr. Mangum noted that plaintiff did not appear to be in any significant pain or acute distress, yet she complained certain motions were uncomfortable and was restricted in how far she claimed she could flex or bend. He found it difficult to determine whether she was giving one hundred percent effort, and rated her with a three percent permanent disability of her back.
20. Plaintiff has also been evaluated by Dr. Anthony Wheeler, a neurologist, who examined her on April 14, 1994 and again on November 17, 1994. Dr. Wheeler found evidence of symptom magnification. On the April 14 visit, he found plaintiff was at maximum medical improvement. Dr. Wheeler is of the opinion plaintiff has a five percent permanent impairment of her back.
21. Although plaintiff had already reached maximum medical improvement, on her November 7, 1994 visit, Dr. Wheeler was of the opinion that plaintiff was deconditioned and she could benefit from physical therapy. He referred her to such a program. After the program, he noted improvement in her conditioning. The physical therapy was followed by a functional capacity evaluation. Plaintiff returned to work at a job within the guidelines of the functional capacity evaluation on April 7, 1995.
22. As a result of her injury by accident of July 25, 1992, plaintiff sustained a mild lumbar strain. She did not sustained any disc injury or nerve irritation. By January 4, 1993, plaintiff had reached maximum medical improvement and sustained a five percent permanent impairment to her back.
23. As a result of her injury by accident, from July 25, 1992 through January 3, 1993, plaintiff was unable to perform her regular job and was incapable of earning the same wages she had earned in her regular employment at the time of her injury by accident.
24. As of January 4, 1993, plaintiff was able to return to her former position at Hardees at her previous hourly wage. Since January 4, 1993, plaintiff's wage earning capacity has not been diminished or impaired in any way as a result of her injury by accident.
25. Plaintiff voluntarily left her job at Hardees on February 7, 1993, for reasons unrelated to her injury by accident. Plaintiff secured employment almost immediately and continued to be gainfully employed at Pizza Hut until she quit that job. In August, she began a job at Kemet Electronics, and in January, 1994, she also started working as a waitress. Since leaving Hardees on or about February 7, 1993, plaintiff has not been incapacitated due to her back injury from earning the same wages she was receiving at the time of her injury by accident.
26. Medical treatment rendered up until the time plaintiff reached maximum medical improvement was reasonably necessary to effect a cure or give relief or lessen plaintiff's period of disability. The treatment rendered by Dr. Jordan up until April 2, 1993 also appears reasonably necessary to give plaintiff symptomatic relief. The evaluations done for permanent disability ratings by Dr. Hamrick, Dr. Mangum, and Dr. Wheeler are approved. The physical therapy recommended by Dr. Wheeler, although not necessary to lessen plaintiff's period of disability, did appear to bring some symptomatic relief and is therefore approved.
* * * * * * * *
The foregoing stipulations and findings of fact engender the following:
CONCLUSIONS OF LAW
1. On July 25, 1992 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant employer. N.C.G.S. § 97-2.
2. As a result of her injury by accident, plaintiff incurred medical expenses for treatment rendered which was reasonably necessary to effect a cure or give relief, including the chiropractic treatment rendered through April 2, 1993, the disability evaluations, and the final round of physical therapy completed in early 1995. N.C.G.S. § 97-25.
3. As a result of her injury by accident, plaintiff was temporarily totally disabled from July 25, 1992 until January 4, 1993, for which she is entitled to compensation, less amounts heretofore paid. N.C.G.S. §§ 97-2 (9) and 97-29.
4. As a result of her injury by accident, plaintiff has sustained a five percent permanent impairment to her back. N.C.G.S. § 97-31 (23).
5. Plaintiff's average weekly wage of $180.00, yields a compensation rate of $120.00. N.C.G.S. § 97-2 (5).
* * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Defendant shall pay plaintiff's medical expenses incurred for such treatment as was reasonably necessary to effect a cure or give relief or lessen plaintiff's period of disability as set forth herein.
2. Defendant shall pay plaintiff compensation at the rate of $120.00 per week from July 25, 1992 through January 3, 1993 for temporary total disability, with credit for amounts heretofore paid.
3. Defendant shall pay plaintiff compensation at the rate of $120.00 per week for 15 weeks beginning January 4, 1993 for her permanent disability of her back, in one lump sum.
4. A reasonable attorney's fee of twenty-five percent of the compensation awarded plaintiff herein is approved for plaintiff's attorney, and shall be deducted from the compensation due plaintiff and paid directly to her attorney.
5. Defendant shall pay the costs due this Commission.
 S/ ______________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________________ BERNADINE S. BALLANCE COMMISSIONER
JRW:md 1/22/97