***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications; therefore, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated and there is no question as to mis-joinder or non-joinder of parties.
4. An employee-employer relationship existed between the parties on September 4, 2000.
5. North Carolina Farm Bureau Mutual Insurance Company was the carrier on the risk.
6. Plaintiff sustained a compensable injury on September 4, 2000.
7. Plaintiff's average weekly wage is $866.71, yielding a compensation rate of $577.84.
8. The parties stipulated the following documentary evidence:
a. Stipulated Exhibit #1: Medical records and reports.
b. Stipulated Exhibit #2: Plaintiff's discovery responses.
c. Stipulated Exhibit #3: Earning records and related documents.
d. Stipulated Exhibit #4: Wage information and a Form 22.
e. Stipulated Exhibit #5: Industrial Commission forms.
f. Stipulated Exhibit #6: Return receipt request forms.
9. The Pre-Trial Agreement dated February 2, 2004, which was submitted by the parties, is incorporated by reference.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was forty-seven years old at the time of the hearing before the Deputy Commissioner and was a high school graduate. Plaintiff began working for defendant-employer in July 2000 as a delivery driver. Plaintiff's job duties included palletizing cartons of eggs according to orders from the stores on his route, loading the pallets onto his truck, driving to the stores and unloading the eggs from his truck.
2. On September 4, 2000, plaintiff sustained a compensable injury by accident when he fell from a loading dock at a Food Lion store while making a delivery. Plaintiff was attempting to climb down the loading dock, which was full of large bundles of cardboard. Plaintiff felt himself begin to fall and grabbed the railing on the loading dock with his left arm. Plaintiff felt his arm and shoulder strain, so he let go of the railing, falling to the ground. Plaintiff landed on his buttocks on the pavement. As a result of the fall, plaintiff injured his low back. On September 7, 2000, plaintiff saw a physician's assistant at Dr. W. Jones' office, where he was treated with medication and heat, and was taken out of work. Plaintiff's symptoms persisted despite the treatment and he was subsequently referred to Dr. Jeffrey Daily, an orthopedic surgeon.
3. On September 13, 2000, Dr. Daily examined plaintiff, changed his medication and ordered physical therapy. Since plaintiff's symptoms appeared to be confined to his low back, no further diagnostic tests were ordered at that time. On September 26, 2000, plaintiff returned to work with restrictions and rode with another driver for whom he completed the paperwork associated with the route. Despite the treatment and work restrictions, plaintiff continued to experience significant back pain. Dr. Daily referred plaintiff to Dr. John Welshofer, a physiatrist.
4. On October 27, 2000, Dr. Welshofer examined plaintiff. Dr. Welshofer noted plaintiff might have sustained an annular tear to one of his lumbar discs so he ordered an MRI. Dr. Welshofer also changed plaintiff's medication. Plaintiff returned to Dr. Welshofer on November 22, 2000 and reported significant improvement. The MRI showed mild spinal stenosis at L2-3 and L3-4 and a slight disc bulge at L5-S1 with a possible annular tear. Plaintiff reported to Dr. Welshofer that he was feeling better overall. Dr. Welshofer released plaintiff with a 0% permanent partial impairment to his back and authorized him to return to work with no restrictions on November 23, 2000. Dr. Welshofer also advised plaintiff to return if the back pain recurred.
5. Plaintiff did return to work at his regular job, but had several flare-ups of back pain in the subsequent months. On those occasions, plaintiff asked a neighbor to help him load his truck. Other than those episodes, plaintiff was able to continue working until June 2001 when he became depressed. On June 8, 2001, plaintiff stopped reporting for work and defendant-employer subsequently terminated plaintiff's employment. In July 2001, plaintiff recovered sufficiently from his depression and began working for Employee's Express as a truck driver. Plaintiff left that employment the following month to work for J. B. Hunt, where plaintiff worked as a long-haul truck driver. In January 2002, plaintiff stopped working for J. B. Hunt and obtained another truck driving job with Lester Coggins Trucking, where he worked until July 2002. While employed with Lester Coggins Trucking, plaintiff sometimes traveled 3,000 miles per trip. Plaintiff was paid based on the number of miles driven and his pay stubs reflect a deduction for health care coverage.
6. On June 27, 2002 plaintiff awoke after having slept on a couch and had difficulty standing due to back pain. Plaintiff's back continued to bother him, but he did not go to the doctor. Instead, plaintiff went to work and drove a load to central Florida. Once he arrived at his delivery point, plaintiff was unable to unload his truck. Plaintiff was in so much pain that an ambulance was called to take him to the hospital. On July 3, 2003, plaintiff went to the emergency room at Leesburg Regional Medical Center in Florida. Plaintiff reported low back pain radiating to his right side since the previous weekend. Plaintiff denied a history of trauma or strenuous exercise. Plaintiff was treated with medication, rest, ice and heat. Another truck driver came to Florida to drive plaintiff back to North Carolina.
7. On July 9, 2002, plaintiff sought chiropractic treatment with Dr. Douglas Burch, who noted plaintiff complained of low back pain and radiating pain and numbness to plaintiff's right buttock and thigh, with a history of onset on June 29, 2002. Dr. Burch treated plaintiff until the end of July, but then recommended that plaintiff return to Dr. Welshofer due to his persistent symptoms.
8. By the end of July 2002, plaintiff no longer had health insurance coverage because his employment with Lester Coggins Trucking ended. On August 7, 2002, plaintiff went to Dorn Veterans Affairs Medical Center in Columbia, South Carolina and saw a physician's assistant. Plaintiff indicated that he fell and broke his tail bone while stationed in Belgium many years before when he was serving in the military and had chronic problems with low back pain since then. Plaintiff stated that his symptoms had become worse during the previous six months. Plaintiff also complained of problems in his left shoulder and arm. The physician's assistant ordered an MRI of plaintiff's lumbar spine, which provided similar results to the one performed in November 2000. Since there was no significant nerve compression demonstrated, plaintiff was treated with conservative measures.
9. At a follow-up appointment on March 10, 2003, plaintiff informed the physical therapist at the V.A. Medical Center of his fall at work with defendant-employer. Plaintiff indicated that he had episodes of back pain, that in 2002 his symptoms had progressed to his right leg, and that he quit working because his symptoms had gotten so bad that he was unable to unload his truck. Plaintiff underwent an MRI and was treated with a TENS unit. Plaintiff was seen at the V.A. Medical Center again in April 2003 but did not receive further medical treatment for the next three months.
10. On July 1, 2003, plaintiff went to Dr. Sandra Abda, an orthopedic surgeon. Plaintiff was still experiencing low back and right leg pain, and was also complaining of problems with his left shoulder and arm. Dr. Abda injected plaintiff's shoulder and ordered an MRI, which showed a partial rotator cuff tear. Dr. Abda's partners, Dr. Joseph King and Dr. Chason Hayes, primarily treated plaintiff's left shoulder problem during the next six weeks. Plaintiff then returned to Dr. Abda who thought that plaintiff was too heavy to have surgery for his low back problems, as plaintiff gained almost fifty pounds since his September 4, 2000 fall at work. Dr. Abda sent plaintiff to Dr. Eric Nabors, a spine surgeon, for another opinion. Dr. Nabors examined plaintiff on October 10, 2003 and ordered a myelogram/CT scan. The tests revealed no evidence of spinal stenosis or a herniated disc and, therefore, Dr. Nabors did not recommend surgery. Dr. Abda released plaintiff from care on October 31, 2003.
11. Defendants originally admitted liability for benefits under the Workers' Compensation Act for plaintiff's fall of September 4, 2000 pursuant to a Form 60 filed with the Industrial Commission and defendants paid for the medical treatment plaintiff received that year. Although defendants subsequently denied liability for the symptoms plaintiff developed in June 2002, defendants did authorize plaintiff to return to Dr. Welshofer after the Deputy Commissioner's hearing. Dr. Welshofer examined plaintiff on March 1, 2004. The doctor noted plaintiff had new complaints of sciatica-type symptoms in his right leg, but he reviewed the recent MRI and agreed that there was no herniated disc or impingement shown that would explain plaintiff's complaints of radicular pain. Dr. Welshofer was of the opinion that plaintiff was probably experiencing symptoms due to an annular tear and internal disc derangement. Dr. Welshofer agreed that plaintiff was not a surgical candidate due to his size, but thought that an IDET procedure might be a treatment option.
12. Plaintiff claimed that the back problems for which he has been treated since July 2002 were causally related to his fall on September 4, 2000 and that he thereby sustained a material change for the worse in his work-related condition. Defendants have denied that there was a causal relationship between the September 2000 back injury and the symptoms plaintiff developed in June 2002. Furthermore, defendants have raised the time limit of N.C. Gen. Stat. § 97-47 as a bar to this claim.
13. Defendants last paid compensation to plaintiff for temporary total disability on October 3, 2000. Plaintiff was released to return to regular work with no restrictions by Dr. Welshofer effective November 23, 2000, and Dr. Welshofer gave plaintiff a 0% permanent partial disability rating at that time. Defendants filed a Form 28B on October 3, 2000 for indemnity compensation and a final Form 28B for medical compensation on March 15, 2001. The Form 60 admission of liability was a final award. Plaintiff did not attempt to reopen his claim with the Industrial Commission until February 14, 2003 when his attorney submitted a motion to reopen the case based upon a change of condition. This motion was filed more than two years after the last payment of compensation pursuant to an award. There was no evidence of any misrepresentations by defendants that would have caused plaintiff to delay reopening his claim. Therefore, plaintiff failed to timely file his claim for a change of condition.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff was released to return to work without restrictions, did return to work in his regular job within three months of his injury, and was given a 0% permanent partial disability rating by his treating physician in November 2000. Thus, the Form 60 filed in this case was a final award. N.C. Gen. Stat. § 97-82(b);Watkins v. Motor Lines, 279 N.C. 132, 181 S.E.2d 588
(1971).
2. The Industrial Commission shall not review any award of compensation on the grounds of a change of condition if the application for review is made two years after the date of the last payment of compensation. N.C. Gen. Stat. § 97-47. Plaintiff was last forwarded compensation from the September 4, 2000 injury by accident on October 3, 2000. Plaintiff did not reopen his claim until February 14, 2003 when his attorney submitted a motion to reopen the case based on a change of condition. As such, plaintiff did not reopen his claim on a timely basis because he did not file a claim within two years of the date of the last payment of compensation of temporary total disability compensation to him pursuant to the Form 60. Id.
3. Defendants are not estopped to raise N.C. Gen. Stat. § 97-47 as a defense to this claim. N.C. Gen. Stat. § 97-47; Biddix v. Rex Mills, 237 N.C. 660,75 S.E.2d 777 (1953).
4. Plaintiff's claim for further compensation is barred due to his failure to reopen his claim on a timely basis. N.C. Gen. Stat. § 97-47; Watkins v. MotorLines, supra.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for additional workers' compensation benefits under the Workers' Compensation Law must be and is hereby DENIED.
2. Each side shall pay its own costs.
This the 31st day of May 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER