* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * * *Page 2 MOTIONS
The following motions related to the present action are pending before the Full Commission:
1. Defendant's Motion to Terminate Benefits for Failure to Cooperate with Vocational Efforts, dated August 12, 2005;
2. Defendant's Form 24 Application to Terminate or Suspend Payment of Compensation, dated November 21, 2005;
3. Defendant's Form 24 Application to Terminate or Suspend Payment of Compensation, dated July 26, 2007; and
4. Defendant's Motion for Additional Evidence for the Form 24, dated October 15, 2007.
Pursuant to Rule 701(6) of the Workers' Compensation Rules of the North Carolina Industrial Commission, the Full Commission hereby GRANTS Defendant's October 15, 2007, Motion for Additional Evidence and admits the August 31, 2007, vocational rehabilitation report of Brian Bernas into the record on appeal.
For the reasons set forth herein, the Full Commission DENIES Defendant's August 12, 2005, Motion to Terminate Benefits and Defendant's November 21, 2005, and July 26, 2007, Form 24 Applications to Terminate or Suspend Compensation.
 * * * * * * * * * * * *Page 3 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The Full Commission's April 14, 2003, Opinion and Award is incorporated herein by reference as if fully set forth.
3. The issues for determination include the following:
 a. Has Defendant met its burden of proof to support its motion under N.C. Gen. Stat. § 97-25
seeking an order to terminate Plaintiff's benefits?
 b. If so, was Plaintiff's refusal to comply with any order justified in the opinion of the Industrial Commission?
 c. Is Plaintiff entitled to argue the issue of permanent and total disability under N.C. Gen. Stat. § 97-29?
 d. If so, is Plaintiff entitled to an award of permanent total disability benefits under N.C. Gen. Stat. § 97-29?
 e. Has either Plaintiff or Defendant prosecuted and/or defended the present dispute without reasonable ground in violation of the provisions of N.C. Gen. Stat. § 97-88.1?
 * * * * * * * * * * * *Page 4 EVIDENCE
1. The following stipulated exhibits were submitted before the Deputy Commissioner:
 a. Stipulated Exhibit 1: Pre-Trial Agreement
 b. Stipulated Exhibit 2: Set of Motions and Responses
2. The following exhibit was submitted by Plaintiff before the Deputy Commissioner:
 a. Plaintiff's Exhibit 1: Job Search Notes
3. The following exhibits were submitted by Defendant before the Deputy Commissioner:
 a. Defendant's Exhibit 1: Plaintiff's Affidavit
 b. Defendant's Exhibit 2: Letter dated July 25, 2005
 c. Defendant's Exhibit 3: Letter dated July 22, 1996
 d. Defendant's Exhibit 4: Job Search Report
4. The following depositions were received into evidence following the hearing before the Deputy Commissioner:
 a. Cheryl A. Marsh
 b. Gregory B. Henderson
 * * * * * * * * * * * *Page 5 
Based on the competent evidence of record and the reasonable inferences arising therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on August 29, 1942, and completed the eighth grade of school. Pursuant to testing performed in 2001, Plaintiff was reading at about the fourth-grade level and spelling at the fifth-grade level, and was at the fourth-grade level in math. Testing also revealed Plaintiff to have memory and concentration difficulties.
2. On January 3, 1995, while at work for Defendant, Plaintiff slipped on ice in the asphalt parking lot, his feet went out from under him, and he fell directly on his lower back and tailbone areas. This fall caused Plaintiff to injure his low back and tailbone.
3. Plaintiff suffers from chronic regional pain syndrome of his low back due to his January 3, 1995, accidental fall. Plaintiff's chronic regional pain syndrome of his low back is marked by constant low back pain that is increased by minimal activity and relieved somewhat by complete recumbency. His pain syndrome also is marked by poor sleeping and decreased endurance.
4. Plaintiff's low back pain is frequently of a moderate to severe degree and can only be improved with lying down and/or with pain medicine. Plaintiff's low back pain syndrome prevents his being able to sit for longer than about an hour or two, to stand for more than about 10 or 15 minutes at a time, and to walk for more than about 15 to 20 minutes. Plaintiff's low back pain syndrome prevents his being able to stand, sit, or walk, or any combination thereof, longer than about 3 hours at a time followed by a period of lying down for about an hour or so.
5. As a result of the January 3, 1995, injury, and in accordance with a Form 21 Agreement approved by the Industrial Commission on February 21, 1995, Plaintiff was deemed *Page 6 
to be temporarily totally disabled and entitled to compensation at a weekly rate of $347.50 and continuing for necessary weeks.
6. During the period of May 1, 1995, through July 15, 1995, Plaintiff returned to work with Defendant at a job created for him to assist with the return to work effort. This return to work effort was ultimately unsuccessful.
7. Plaintiff reached maximum medical improvement from his January 3, 1995, back injury in March 1996. On March 22, 1996, Defendant employed CorVel Corporation to provide vocational rehabilitation services to Plaintiff.
8. On June 5, 1996, Defendant wrote a letter to the Industrial Commission requesting that Plaintiff be ordered to comply with CorVel's vocational rehabilitation efforts. On July 22, 1996, the Chief Claims Examiner of the Industrial Commission wrote a letter to Plaintiff ordering him to comply and cooperate with the vocational rehabilitation being provided by CorVel.
9. An October 10, 1996, functional capacity evaluation ("FCE") revealed that Plaintiff was functioning at a less than sedentary physical work demand level with moderate to severe low back pain. Pursuant to an October 22, 1996, "Physical and Functional Assessment" completed for CorVel by neurologist Dr. Anthony H. Wheeler, plaintiff is restricted to standing daily with a break every 2 hours for "less than 1 hr," sitting daily (with breaks) for "less than 1 hr," walking daily for "less than 1 hr," is not to do any stooping, bending, or reaching overhead, and is limited to lifting "10 lbs. occasionally."
10. In late February 1997, Defendant directed CorVel to cease providing vocational rehabilitation services to Plaintiff, and referred Plaintiff's claim to defense counsel for review. *Page 7 
11. In November 1999, the parties submitted a Form 26 compensation agreement to the Industrial Commission for approval. The Form 26 Agreement to pay compensation to Plaintiff for a 10% disability rating to his back pursuant to N.C. Gen. Stat. § 97-31(23) was approved by the Industrial Commission on February 3, 2000.
12. In January 2001, Plaintiff moved to set aside the Form 26 Agreement by filing a Form 33 requesting a hearing on the matter. Deputy Commissioner George Glenn conducted a hearing in March 2002 on the issues of whether the Form 26 Agreement should be set aside and whether Plaintiff was permanently and totally disabled.
13. Deputy Commissioner Glenn entered an Opinion and Award in August 2002 finding that the Form 26 Agreement should be set aside, and further finding that Plaintiff was permanently and totally disabled. Deputy Commissioner Glenn awarded Plaintiff lifetime benefits. Defendant appealed the Opinion and Award to the Full Commission.
14. On April 14, 2003, the Full Commission affirmed Deputy Commissioner Glenn's decision to set aside the Form 26 Agreement, but reversed his decision to award lifetime benefits. The Full Commission awarded ongoing temporary total disability benefits until further order of the Industrial Commission or until such time as Plaintiff returned to work. The Opinion and Award of the Industrial Commission was affirmed by the North Carolina Court of Appeals in a decision filed January 18, 2005.
15. In July 2005, more than 8 years after directing CorVel to cease providing vocational rehabilitation assistance to Plaintiff, Defendant decided to resume vocational rehabilitation services to Plaintiff. Defendant hired Gregory B. Henderson and his firm, VocMed, Inc., to provide vocational rehabilitation services to Plaintiff. *Page 8 
16. As part of the vocational rehabilitation plan devised for Plaintiff, the vocational rehabilitation professional assigned by VocMed to work with Plaintiff, Derek Xanders, recommended that Plaintiff attend regular GED classes at the local community college and participate in weekly vocational rehabilitation meetings with Mr. Xanders in an attempt to find suitable employment.
17. On August 8, 2005, Plaintiff took an adult basic education test at Rowan-Cabarrus Community College ("RCCC"). The test showed that Plaintiff read at the second-grade level and was able to perform math at the fourth-or fifth-grade level. RCCC offers an adult basic education lab for students functioning at below the sixth-grade level of education, pre-GED classes for students between the sixth-and ninth-grade levels, and GED prep classes for students above the ninth-grade level. RCCC is not permitted to test anyone with the GED until they are at least at the ninth-grade level.
18. Plaintiff subsequently began participating in adult basic education labs, but found himself frequently unable to attend the full three hours of classes in any given day because of his injury-related pain symptoms. After participating at least partially in approximately 20 adult basic education labs between January 2006 and May 2006, testing revealed that Plaintiff had failed to significantly improve his math level, and had improved his reading level only to the fourth-or fifth-grade level, which was consistent with the level demonstrated by Plaintiff during his prior testing in 2001. Plaintiff estimates that, at the rate that he was learning in the adult basic education classes, it will take him 10 years to complete his GED. Nonetheless, Plaintiff has continued to participate in the adult education classes.
19. Mr. Xanders sought to meet with Plaintiff weekly so that Plaintiff could "receive his job offers in a timely and cost-effective manner." Plaintiff declined to meet with Mr. *Page 9 
Xanders on a weekly basis, but did ask Mr. Xanders to provide him with possible job prospects that fell within Plaintiff's very limited "less than sedentary" work capacity. The Full Commission finds that Plaintiff's decision to not meet weekly with Mr. Xanders was reasonable and did not constitute a failure to cooperate with reasonable vocational rehabilitation efforts.
20. During August and September 2005, Mr. Xanders provided possible prospective employment opportunities to Plaintiff, and Plaintiff contacted about 20 potential employers. Most, if not all, of these employment opportunities were beyond Plaintiff's "less than sedentary" work capacity, and none of these possible employers offered employment to Plaintiff.
21. On January 17, 2006, Plaintiff, in interrogatories to Defendant, sought Defendant's identification of suitable employment opportunities for Plaintiff in light of his limited work capacity and his chronic severe low back pain condition. Defendant was ordered to answer these interrogatories. In its April 17, 2006, answer to the interrogatories, Defendant through counsel identified about 18 positions from the "Want Ads" in the Salisbury Post and Charlotte Observer as job possibilities for Plaintiff. Plaintiff applied for employment or checked into these 18 possible positions, which all appeared to be beyond Plaintiff's work capacity. Plaintiff received no job offers.
22. In April 2006, Mr. Henderson of VocMed prepared a labor market survey concerning Plaintiff. The survey listed various possible employment opportunities for Plaintiff. The opportunities Mr. Henderson identified all appear to be beyond Plaintiff's limited educational level and work capacity.
23. When Mr. Henderson was asked whether VocMed, at the time it was hired in July 2005, believed that Plaintiff was likely to find employment suitable to his capacities in the competitive employment Market, Mr. Henderson explained: *Page 10 
 We obviously determined that based on the information we had that he was employable, and our philosophy at VocMed is to permit the process, then determine if he is not. In other words, we will go out. We will attempt to locate appropriate employment. If we cannot, then, in our opinion, the process has then determined that [Plaintiff] or whomever is not employable.
24. Mr. Henderson acknowledged that Plaintiff's moderate to severe back pain, which can only be improved with lying down or pain medicine, would interfere with a majority of jobs. But, as Mr. Henderson explained, "My experience in working with employers is that they take the individual, and it's the degree that the individual wants to work, that they will in turn be willing to make necessary accommodations, because they do indeed want to hire the most enthusiastic individual that they can find."
25. Mr. Henderson further testified that, insofar as Plaintiff applied to all of the places identified by Mr. Xanders and was not hired by any of them, that would mean that VocMed would need to possibly identify other options, including education and vocational training. As far as assessing whether Plaintiff could be successful in getting his GED, Mr. Henderson acknowledged that Plaintiff's memory and concentration difficulties would be an obstacle, but believed that that obstacle could be overcome. However, Mr. Henderson did not purport to have any personal opinion as to Plaintiff's capability in securing his GED. Instead, he testified, "I refer the individual to the adult basic skills department at the community college and let them provide the testing and let them place the individual in the proper program." To Mr. Henderson, the fact that Plaintiff was given any score at all on his August 2005 adult basic education test indicated that the adult basic education department of RCCC believed there was some possibility of Plaintiff ultimately obtaining a GED. Insofar as a GED is "designed for individuals that want to accelerate their educational process," Mr. Henderson opined that, if Plaintiff took classes three hours a day, five days a week, Plaintiff could obtain his GED in one year. *Page 11 
26. The Full Commission finds that Defendant's current vocational rehabilitative plan or practice of directing Plaintiff to seek jobs outside of his physical restrictions is not reasonably calculated to lessen Plaintiff's disability. The Full Commission finds, based on the greater weight of the evidence of record, that Plaintiff has reasonably complied with the job-search component of VocMed's vocational rehabilitation efforts, in that Plaintiff has applied for positions identified by VocMed, even though they were outside of Plaintiff's limited work capabilities, and has received no job offers.
27. The Full Commission further finds credible Plaintiff's testimony concerning his limited ability to participate in adult education classes. The Full Commission finds, based on the greater weight of the evidence of record, that Plaintiff's pain and physical restrictions related to his compensable injury and his memory and concentration difficulties significantly limit his capability to obtain a GED in a timely manner. The Full Commission finds not credible Mr. Henderson's suggestion that Plaintiff could take adult education classes for three hours a day, five days a week, and thereby obtain his GED in one year. However, the Full Commission finds that the pursuit of a GED may offer some possibility of lessening Plaintiff's disability, and therefore constitutes reasonable vocational rehabilitation. The Full Commission finds that Plaintiffs ongoing efforts to pursue adult education constitute reasonable compliance with the education and training component of VocMed's vocational rehabilitation efforts.
28. Based on the greater weight of the evidence, Plaintiff has reasonably cooperated with Defendant's efforts to provide vocational rehabilitation services.
29. Neither Plaintiff nor Defendant brought, prosecuted, or defended the present action without reasonable ground.
 * * * * * * * * * * * *Page 12 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 3, 1995, Plaintiff sustained a compensable injury by accident to his back. N.C. Gen. Stat. § 97-2(6). As a result of that injury, Plaintiff was rendered, and remains, totally disabled. N.C. Gen. Stat. § 97-2(9); Watkins v. Central Motor Lines, Inc., 279 N.C. 132,181 S.E.2d 588 (1971) ("If an award is made by the Industrial Commission, payable during disability, there is a presumption that disability lasts until the employee returns to work.")
2. Plaintiff is not barred from raising the issue of permanent and total disability. However, Plaintiff has failed to carry his burden of proving that he is permanently and totally disabled, insofar as Plaintiff has not presented sufficient medical or vocational evidence that reveals he cannot work in any employment. Bryce v. SheratonInn, 137 N.C. App. 131, 527 S.E.2d 323 (2000).
3. Because Plaintiff has a presumption of continuing total disability, it is Defendant's burden to show that Plaintiff is employable and that there are jobs he can obtain. Plaintiff has been out of work for more than 10 years. Any vocational rehabilitation plan for Plaintiff must be carefully tailored to Plaintiff's current circumstance, in accordance with Rule III(E) of the North Carolina Industrial Commission Rules for Utilization of Rehabilitation Professionals in Workers' Compensation Claims.
4. The Full Commission concludes that Plaintiff has reasonably complied with the reasonable vocational rehabilitation services offered by VocMed. To the extent that VocMed's directives that Plaintiff (a) apply for jobs and (b) enroll in a GED program and obtain a GED fail to take into account Plaintiff's current medical and pre-existing educational conditions, such *Page 13 
vocational rehabilitation efforts are not "reasonable" and Plaintiff's refusal to fully comply with such directives is not unreasonable.Bryant v. Weyerhaeuser Co., 130 N.C. App. 135, 138, 502 S.E.2d 58, 61,disc. review denied, 349 N.C. 228, 515 S.E.2d 700 (1998).
5. No sanctions under N.C. Gen. Stat. § 97-88.1 are warranted against either Plaintiff or Defendant.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for permanent and total disability benefits is hereby denied. The award set forth in the April 14, 2003, Opinion and Award of the Full Commission and affirmed by the North Carolina Court of Appeals shall remain in effect.
2. Defendant's motions for the termination or suspension of Plaintiff's disability benefits are hereby denied.
3. Defendant shall bear the costs.
This the ___ day of November, 2007.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/_______________ BUCK LATTIMORE COMMISSIONER