Plaintiff was injured in an auto accident under compensable circumstances on April 15, 1991, and was subsequently disabled until August 10, 1991 due to neck and back strain. Following his treating physician's evaluation that he suffered no permanent impairment, he returned to work at full duty, without restrictions. As late as March 24, 1992, plaintiff's physician, while noting "some lingering discomfort . . . [that] will eventually resolve", opined that he had "no permanent functional [impairment] relative to the accident to 4/15/91." Seventeen months after the accidents, in September, 1992, the plaintiff was hospitalized with complaints of pain in his low back, right hip, right testicle, and right leg. Plaintiff's pain differed from symptoms experienced closer to the time of the accident. (See Tr. p. 22) The physician seeking to determine the cause of these problems noted, "There was no history of injuries", and suspicions of a herniated disk were ruled out by radiological examination. Plaintiff suffers from Graves Disease, a malady involving over-production of the thyroid hormone.
While defendants admitted liability for the traffic accident and its obvious traumatic results, plaintiff bears the burden of proving that the condition that led to periods of disability beginning in September of 1992 were related to that accident. "If an award is made by the Industrial Commission, payable during disability [i.e., an approved Form 21 agreement for "necessary weeks"] there is a presumption that disability lasts until the employee returns to work and likewise a presumption that disability ends when the employee returns to work at wages equal to those he was receiving at the time his injury occurred."Watkins v. Motor Lines, 279 N.C. 132, 137,181 S.E.2d 588 (1971); Tucker v. Lowdermilk, 233 N.C. 185, 189,63 S.E.2d 109. There is no medical opinion evidence in this record to carry this burden. Plaintiff needs medical evidence that will not merely enable lay conjecture that the accident and the subject disabling problems are related, but some expert medical analysis suggesting that it is more probable than not — despite the intervening time, recovery and activity — that the accident was a proximate cause of plaintiff's disability in 1992 and after. "In cases where there is continuing medical difficulty in determining the etiology of disease and injury, compensation awards cannot be sustained in the absence of expert medical testimony on the matter of causation. See Click v.Freight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980); see also Gillikin v. Burbage, 263 N.C. 317, 139 S.E.2d 753
(1965)." Rutledge v. Tultex Corp., 308 N.C. 85,301 S.E.2d 359 (1983).
The absence of such evidence in a case of this nature typically means that it cannot be obtained. In addition, what was recorded by physicians about his condition more than a year after the injury suggests that plaintiff did not relate them, and that they were caused by disease rather than and old trauma. Any expert medical opinion positing a causal connection with the reasonably complete medical records in evidence might well be too speculative to rely upon. Thus we will not exercise our discretion to reopen the record for additional evidence.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner as follows:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. A North Carolina Industrial Commission Form 21, [S]ettlement Agreement [for Compensation for Disability] approved August 6, 1991 appears in the Commission file.
2. On April 15, 1991, the parties were bound by and subject to the North Carolina Workers' Compensation Act.
3. On said date the employer-employee relationship existed between the parties.
4. As of said date the defendant was a duly qualified self-insurer under the provisions of the North Carolina Workers' Compensation Act.
5. That the plaintiff sustained an injury by accident arising out of and in the course of the employment with the defendant-employer on April 15, 1991.
6. On said date the plaintiff was earning an average weekly wage of $520.80.
7. That the issues to be determined in this case are:
a. Were the injuries of which the plaintiff complains [i.e., the medical condition] caused by the accident occurring on April 15, 1991; and,
b. If so, has the plaintiff sustained a change in his condition since April 15, 1991; and,
c. If so, to what compensation is the plaintiff entitled under the Act; and,
d. To what credits is the defendant entitled against such compensation, if any.
8. The parties further stipulate into evidence Forms appearing in the Commission file, including the Form 21, 33R, 33, Law Enforcement Accident Report and Answers to Interrogatories.
9. It is further stipulated that the plaintiff received medical care and treatment on the following dates from the following medical providers:
April 16, 1991, Dr. Gary L. Thorne and Dr. Byron McNeill
May 15, 1991, Cape Fear Valley Medical Center
December 1992, Dr. Leon Dantzler
June 12, 1991, Dr. Barry E. White
August 1, 1991, Dr. Robert J. Logel
June 1991, Village Therapy
September 1992, Highsmith Rainey Hospital
June 1991, Protective Therapy
January 1993, Dr. Lucas VanTran
November 23, 1993, Dr. Mack Wayne
June 25, 1993, Dr. Johnson
November 4, 1991, Dr. Henry Izurieta
June 29, 1992, Primary Care
August 17, 1993, Dr. Timothy Taft
June 1991, Proactive Therapy
At the hearing on June 13, 1994, the parties introduced the following exhibits:
1. Plaintiff's Exhibit 1, marked P1, consisting of a letter dated June 1, 1994, from Steve Bowman received by the plaintiff June 11, 1994, to which the defendant objects.
2. Defendant's Exhibit 1, marked D1, consisting of a report and video tape prepared by Mr. Ronald Strickmaker to which the parties stipulate.
At the hearing on June 13, 1994, the defendant pled the defenses under Section 97-47 of the Act.
Subsequent to the hearing on June 13, 1994, the parties entered the following documentation into the record which have been considered by the undersigned in ruling in this matter and with respect to which all Motions and Objections have been duly considered under the applicable law and rules of evidence:
Approximately 100 pages of medical records and bills and, additionally, plaintiff's 1040 Tax Return for 1993, Schedule C of earning records of a used car business operated by the plaintiff.
* * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. On April 15, 1991, the plaintiff was involved in a two car motor vehicle collision while performing the duties of his employment when he was rear-ended by another automobile while at a standstill on the highway in a truck he was driving in the course and scope of his employment with the defendant.
2. As the result of this incident on April 15, 1991, the plaintiff suffered injuries to his cervical and lumbar spine, and experienced pain in his neck and lower back.
3. Following the auto accident April 15, 1991, the plaintiff was out of work because of the resulting injuries from April 15, 1991 to August 15, 1991. The plaintiff was medically treated and cared for with respect to these injuries subsequent to April 15, 1991, until discharged as fully recovered on March 24, 1992.
4. More than a year after plaintiff's return to work August 15, 1991, he was hospitalized for five days beginning September 17, 1992, for diagnosis of pain in his right hip and a possible herniated lumbar disk, or aseptic necrosis of the hip, conditions not medically attributed to the auto accident of April 15, 1991.
5. The plaintiff was out of work from September 4, 1992 to December 15, 1992, and from June 2, 1993 to September 27, 1993 for medical reasons that were not related to the auto accident of April 15, 1991. Plaintiff did not suffer a substantial change in his condition resulting from injuries suffered in the April 15, 1991 auto accident.
6. The plaintiff was earning an average weekly wage of $520.80 on April 15, 1991.
7. The plaintiff has also received medical treatment for Graves disease from which he suffers, which was not caused or aggravated by the incident occurring on April 15, 1991.
8. The plaintiff received disability benefits under a voluntary policy for which he paid premiums.
* * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. On April 15, 1991, the plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer.
2. As a consequence of that injury, the plaintiff is entitled to temporary total disability compensation benefits from April 15, 1991 to August 15, 1991, at the rate of $347.21 per week.
3. The plaintiff is entitled to the payment of medical compensation expenses incurred as a result of his injuries suffered April 15, 1991, but not for the treatment of his Graves disease or other disabling maladies following his discharge by Dr. Robert J. Logel March 24, 1992.
* * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. The defendant shall pay to the plaintiff in one lump sum temporary total disability compensation benefits from April 15, 1991 to August 15, 1991, at the rate of $347.21 per week, less the attorney fee and credit hereinafter provided, which have not heretofore been paid. The defendant is allowed a credit for compensation and any wages paid to the plaintiff between April 15, 1991 and August 15, 1991.
2. The defendant shall pay any unpaid medical compensation expenses incurred resulting from said injury through the date of his discharge by Dr. Robert J. Logel on March 24, 1992, and for subsequent medical compensation expenses related to the August 15, 1991 injury, but not for the treatment of his Graves disease, or other subsequent unrelated conditions, when the same have been presented to the Commission through the carrier and approved by the Commission.
3. An attorney fee equal to 25 percent of any unpaid compensation awarded herein is hereby approved for C. Leon Lee II for his services to the plaintiff, and shall be deducted from said compensation and paid directly to him.
4. The parties shall each bear their own costs.
 S/ __________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ __________________ LAURA K. MAVRETIC COMMISSIONER
JRW:md