Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner, except for minor modifications which includes correcting the numbering on Findings of Fact No. 18 — 20 and a ruling on plaintiff's attorney fees Motion, as follows:
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. Plaintiff received temporary total disability payments for the time period beginning June 19, 1991 through May 20, 1992, and from December 5, 1992 through March 22, 1993.(Stipulation 4 below extends these payments through May 23, 1993.)
2. Plaintiff received temporary disability payments from May 24, 1993 through June 30, 1993.
3. Plaintiff received temporary total disability payments from January 5, 1995 through the present.
4. There is no Industrial Commission Form 26 that has been approved for the agreement between the plaintiff and the defendants with regard to payments made to plaintiff for the time period December 5, 1992 through May 23, 1993. (Stipulation 2 and the evidence of record indicate payments were actually made through June 30, 1993.)
5. No Form 24 was approved that allowed defendants to terminate compensation to the plaintiff on June 30, 1993.
6. The Defendant-carrier filed a Form 28 with the Industrial Commission on July 26, 1993.
7. Subsequent to the hearing, a set of supplemental stipulations with a cover letter dated October 6, 1995 was submitted to the Commission. This set of supplemental stipulations was marked as stipulated exhibit 7 and received into evidence.
8. Subsequent to the hearing, the parties stipulated that the undersigned may enter a decision on the Form 24 issue based on the stipulation and on the present record.
9. Subsequent to the hearing, the parties submitted a set of stipulations marked as stipulated exhibit 8. This set of stipulations was received into evidence.
10. In the Form 21 Agreement for Payment of Compensation approved by the Industrial Commission, the parties further stipulated that all parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act; that Travelers Insurance Company is the insurance carrier for the employer; that plaintiff sustained an injury by accident on April 11, 1991; and, that plaintiff's average weekly wage entitled him to compensation at the rate of $406.00 per week.
* * * * * * * * * * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission adopts the findings of fact of the Deputy Commissioner with minor modifications and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a thirty-nine year-old male who had been employed by the defendant-employer for almost six years. At the time of plaintiff's compensable injury by accident, plaintiff was employed as a store manager. Plaintiff's duties required serving customers. This duty required squatting in order to fit customers with shoes. Plaintiff was expected to obtain merchandise from the stockroom. This duty required climbing a ladder. Plaintiff was expected to work fifty-five to sixty-five hours per week. Plaintiff was not allowed to sit in the customer area and he was required to spend 95% of the time standing and walking on the sales floor.
2. On April 11, 1991, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer in that he sustained an injury to his right knee and neck as a result of a fall from a ladder.
3. On May 7, 1991, plaintiff was terminated from his job with the defendant-employer purportedly because of poor job performance. At the time of termination, plaintiff's job performance was superior to that of most of the other managers in his district.
4. On June 12, 1991, plaintiff underwent an arthroscopic examination of his right knee as well as a lateral partial meniscectomy and debridement of his right knee. Following the surgery, plaintiff continued to experience pain, swelling, a sensation that his knee was locking, and occasions when his knee popped in and out. Plaintiff also began to suffer from depression.
5. Plaintiff became disabled as a result of the April 11, 1991 compensable injury by accident beginning on June 12, 1991. Plaintiff received temporary total disability payments for the time period beginning June 12, 1991 until May 20, 1992 pursuant to a Form 21 agreement approved by the Industrial Commission on March 30, 1992. The parties entered into this agreement on July 1, 1991 and plaintiff began receiving payments on July 2, 1991.
6. On September 9, 1991, plaintiff was able to return to some type work. Plaintiff was unable to perform a job that required climbing ladders, squatting and lifting heavy items. Plaintiff was unable to return to his previous job as a store manager for the defendant-employer because of the physical limitations to plaintiff's use of his right knee. Plaintiff had also been previously terminated from employment.
7. There is no evidence in the record that plaintiff has ever been offered suitable employment by the defendant-employer when he became able to return to work on September 9, 1991.
8. There is no convincing evidence to support a finding that plaintiff was capable of obtaining a job within his locality suited to his skills, education, and physical ability when he became able to return to work on September 9, 1991.
9. On May 8, 1992, the Industrial Commission approved a Form 24 application allowing the defendants to stop paying the plaintiff temporary total disability payments.
10. Plaintiff did not receive a copy of defendant's Form 24 application to stop payment prior to the Industrial Commission's decision to approve this request on May 8, 1992. Defendants sent a copy of the Form 24 application to plaintiff's former address in Durham, North Carolina. Plaintiff made two motions for the Industrial Commission to reconsider its decision and both requests were denied. Defendant-carrier did not willfully fail to send notice to plaintiff's new address in Lenoir, North Carolina.
11. As of at least June 23, 1992, plaintiff had permanent restrictions that prevented him from doing labor that required lifting heavy objects, squatting, climbing ladders, and doing extensive standing and walking. Plaintiff, on his own, sought assistance in finding work through the Division of Vocational Services. A licensed psychological associate who provided vocational testing requested that plaintiff receive mental health assistance.
12. Plaintiff was unable to return to work earning the same or greater wages from May 21, 1992 through May 24, 1993 as a result of the April 11, 1991 compensable injury by accident and resulting surgery performed by Dr. Nicks on March 22, 1993.
13. On March 22, 1993, plaintiff underwent another arthroscopic debridement of his right knee.
14. Dr. Nicks released plaintiff to return to work performing a sales job on May 24, 1993.
15. On May 24, 1993, plaintiff attempted to return to work for his cousin, Bill Burns, at Burns Wood Products. Plaintiff agreed to work for Mr. Burns doing outside sales for his manufacturing plant. Plaintiff attempted to perform this job from May 24, 1993 until July 1, 1993. In addition to performing a sales job, plaintiff was expected to spend about fifty percent of his time performing production work. Plaintiff was training on a variety of machines making products. Plaintiff worked ten hours a day with one/half hour for lunch. Plaintiff had to stand on his feet eight to ten hours a day. Plaintiff was unable to do this job because he was experiencing increasing pain and swelling in his knees. This job was not suitable because it required extensive standing.
16. The August 11, 1994 fall by the plaintiff was a direct and natural result of the April 11, 1991 compensable injury by accident. Plaintiff's right knee popped out of joint and gave way when plaintiff was going down some stairs. Plaintiff struck his elbows and wrists on concrete. Plaintiff obtained an X-ray to make sure there were no broken bones.
17. Plaintiff was not significantly impaired by the depressive episodes he experienced before the April 11, 1991 injury. Plaintiff's subsequent physical disability resulting from the April 11, 1991 injury by accident significantly contributed to plaintiff's disabling depression.
18. On or about May 26, 1993, defendant-carrier sent plaintiff a check in the amount of $6,205.99 with a Form 26 agreement. Plaintiff signed the Form 26 agreeing that he was receiving temporary total disability payments beginning on December 5, 1992 for necessary weeks. Plaintiff sent the agreement back to the defendant-carrier. The defendant-carrier did not deny that it received the agreement from the plaintiff and has offered no explanation as to why the agreement was not sent to the Industrial Commission for approval.
19. There is no evidence of record that the defendants ever requested the Industrial Commission to order plaintiff to participate in water therapy or that the Industrial Commission made any such order.
20. The defense of this claim has not been the result of stubborn, unfounded litigation.
* * * * * * * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Upon the approval by the Industrial Commission of the July 1, 1991 Form 21 Agreement, a presumption arose that the plaintiff was unable to work at wages equal to those he was receiving at the time his injury occurred and the burden was on the defendants to rebut this presumption. The defendants have failed to rebut this presumption. AlbertStone v. G G Builders., 121 N.C. App. 671, 468 S.E.2d 510
(1996); Watkins v. Central Motor Lines, Inc., 279 N.C. 132,181 S.E.2d 588 (1971).
2. Plaintiff is entitled to receive temporary total disability compensation at a rate of $406.00 for the time period beginning May 21, 1992 through January 4, 1995 when temporary total disability compensation was resumed. Defendants are entitled to a credit for wages earned by plaintiff from May 24, 1993 through July 2, 1993. N.C. Gen. Stat. § 97-29.
3. Defendants are not entitled to credit for payments made to the plaintiff with respect to his period of disability from December 5, 1992 to July 1, 1993. N.C. Gen. Stat. § 97-42.
4. Plaintiff is entitled to have defendants provide all medical treatment including psychological care for depression arising from this injury by accident to the extent it tends or tended to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
5. An injured employee's compensation may be suspended only after entry of an order requiring specific treatment and the employee disobeys the order. Maynor v. Sayles BiltmoreBleacheries, 116 N.C. App. 485, 448 S.E.2d 382(1994).
6. The defendants' denial of plaintiff's further claim was based upon reasonable grounds; therefore, plaintiff's motion for attorney fees pursuant to N.C. Gen. Stat. § 97-88.1. should be denied.
7. Plaintiff's motion for attorney fees as a part of the costs on appeal to the Full Commission under N.C. Gen. Stat. § 97-88 should be granted as defendant brought this appeal and by this Opinion and Award the Full Commission is ordering defendant to make or continue payment of benefits.
* * * * * * * * * * * * * * * * * *
Based upon the findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay to the plaintiff temporary total disability compensation at a rate of $406.00 for the time period beginning May 21, 1992 through January 4, 1995 subject to a credit for wages earned from May 24, 1993 through July 1, 1993. This amount has accrued and shall be paid in a lump sum subject to the attorney's fees approved below.
2. Defendants shall not receive credit for temporary total disability payments made to the plaintiff for the time period from December 5, 1992 to July 1, 1993.
3. The Form 24 approved by the Industrial Commission on May 8, 1993 is hereby VACATED.
4. The Form 24 application submitted by the defendants on September 22, 1995 is DENIED. Plaintiff shall receive continuing temporary total disability compensation until further Order of the Industrial Commission.
5. Plaintiff's request that a ten percent penalty be assessed against the defendant-carrier for failure to pay temporary total disability compensation following May 21, 1993 is DENIED.
6. Defendants shall pay $200.00 for x-rays plaintiff received from Catawba Radiological for the August 11, 1994 fall.
7. Defendants shall pay all medical expenses incurred or to be incurred as a result of the April 11, 1991 compensable injury by accident including the psychological care plaintiff has received for depression.
8. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff under paragraph 1 of this AWARD shall be deducted from that sum and paid directly to plaintiff's counsel.
9. The defendants shall pay an expert witness fee in the amount of $195.00 to Dr. McFadden and $251.94 to Dr. Dimmig.
10. The defendants shall pay the costs due this Commission.
11. Plaintiff's motion for attorney fees on appeal to the Full Commission pursuant to N.C. Gen. Stat. § 97-88 is GRANTED. Defendants shall pay as part of costs of this appeal attorney fees in the amount of $1,200.00 to plaintiff's counsel. This fee is in addition to the attorney's fee in paragraph 8 of the Award.
 S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ J. RANDOLPH WARD COMMISSIONER
BSB:md