The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant-employer is a duly self-insured and Gallagher Bassett Services is the Third Party Administrator.
4. Plaintiff's average weekly wage is $477.31.
5. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on February 1, 1997. This injury by accident was accepted as compensable by defendant.
6. Plaintiff has been paid total disability compensation and temporary partial disability compensation as set forth in documentation stipulated into evidence.
7. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
8. The pleadings relating to this case were stipulated into evidence as Stipulated Exhibit 2.
9. A record of compensation payments in this case were stipulated into evidence as Stipulated Exhibit 3.
10. Payroll information relating to plaintiff was stipulated into evidence as Stipulated Exhibit 4.
11. The time cards for plaintiff during the periods in question in this case were stipulated into evidence as Stipulated Exhibit 5.
12. The issues before the Deputy Commissioner were: (i) whether plaintiff is entitled to receive additional medical treatment relating to plaintiff's compensable injury by accident; (ii) whether plaintiff is entitled to receive total disability compensation for days missed from work due to her compensable injury since plaintiff had been released to return back to work in light duty; (iii) whether plaintiff is entitled to permanent partial disability compensation; (iv) whether the opinion testimony of Dr. Spillman and Dr. Linville should be stricken; (v) whether plaintiff is entitled to permanent and total disability compensation; (vi) whether defendants have provided suitable employment for plaintiff; and (vii) whether defendant should be assessed with attorney's fees for the unfounded defense of this claim?
 *********** EVIDENTIARY RULINGS
Defendant has requested that the deposition of Dr. Meloy be stricken and plaintiff be taxed with the cost of this deposition. While plaintiff clearly was in violation of the Order from the deputy commissioner relating to the taking of post hearing testimony, both parties participated in this deposition and it was submitted for the deputy commissioner's consideration. Plaintiff's counsel is put on notice that should he ever conduct himself in this manner in regards to future cases he will be subject to sanctions and penalties. Defendant's Motion is DENIED.
Defendants have made a Motion that the undersigned consider a December 10 letter from Paul Eckerd, physical therapist, in this case. While plaintiff has agreed to all of the other records related to Mr. Eckerd's therapy for plaintiff, plaintiff objects to this particular document. Mr. Eckerd's testimony was not taken. Defendant's Motion is DENIED.
The objections raised in the depositions of Harlan B. Daubert, M.D., Douglas Linville, M.D., T. Stuart Meloy, M.D., and Scott J. Spillmann, M.D., are OVERRULED.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 41 years old and had prior work experience as a truck driver, administrative sergeant in the United States Army, and as an office manager.
2. In 1993, plaintiff began work as a detention officer for Forsyth County where her job duties included conducting security rounds, escorting and supervising inmates, searching inmates and individuals entering the detention center, and, on occasion, subduing inmates.
3. On February 1, 1997, plaintiff sustained an injury by accident to her back in the course and scope of her employment with defendant while attempting to subdue an inmate. This injury by accident was accepted as compensable and plaintiff has been paid various weeks of total disability compensation as well as temporary partial disability benefits from February 10, 1997 through October 24, 1999.
4. Initially, plaintiff received conservative medical treatment from Primecare Medical Center. Plaintiff's care was referred to Richard O'Keeffe, M.D., an orthopaedic surgeon in July 1997.
5. Dr. O'Keeffe ordered an MRI obtained on August 1, 1997 which was normal. Dr. O'Keeffe treated plaintiff with light duty work, medication and physical therapy.
6. In November 1997, Dr. O'Keeffe ordered a myelogram and a post myelogram CT scan. The results of these tests were normal except for some swelling at the S1 nerve root. Dr. O'Keeffe ordered an epidural injection and referred plaintiff to Dr. T. Stuart Meloy, an anesthesiologist at the Piedmont Anesthesia and Pain Consultant Clinic.
7. In February 1998, Dr. O'Keeffe referred plaintiff to Harlan Daubert, M.D., a spine specialist. Dr. Daubert examined plaintiff and referred plaintiff for a neurological examination with Edward G. Hill, Jr., M.D., a neurologist. Dr. Hill performed electro diagnostic tests which were normal. Dr. Hill recommended an epidural block and transferred plaintiff's care back to Dr. Daubert.
8. Dr. Daubert ordered another MRI on June 6, 1998 which again was normal. As of June 25, 1998, Dr. Daubert released plaintiff with a five percent permanent partial disability to her spine and permanent work restrictions of no lifting over ten pounds. Dr. Daubert made no further recommendations regarding plaintiff's treatment.
9. Plaintiff continued to receive medical care at the pain clinic under the supervision of Dr. Meloy. Pursuant to the recommendation of Dr. Hill, Dr. Meloy continued to treat plaintiff at the pain clinic. Plaintiff's structural anatomy prohibited the completion of the nerve root block.
10. Plaintiff requested a second opinion as to her rating with another orthopaedic surgeon, Douglas A. Linville, II, M.D.
11. Dr. Linville saw plaintiff on August 5, 1998 and after examination, Dr. Linville was uncertain of the etiology of plaintiff's continued complaints and found no significant abnormal pathology on the two MRI scans and myelogram/post myelogram CT scan. Dr. Linville indicated plaintiff's disability was no more than five percent of the back.
12. In October 1998, plaintiff was released by Dr. Daubert and Dr. Linville to return to work at full duty. Plaintiff was provided suitable employment as a receptionist, answering phones and greeting the public at the Forsyth County Detention Center. Plaintiff used a headset, was able to move about and was not required to lift over ten pounds in this position.
13. As of October 1998, plaintiff was earning greater wages than she had earned at the time of the February 1, 1997 accident.
14. In December 1998, plaintiff underwent a functional capacity evaluation at Wake Forest University Baptist Medical Center's Spine Center under the direction of Paul Eckerd, physical therapist. The functional capacity evaluation indicated plaintiff exhibited significant symptom exaggeration. Plaintiff failed two objective tests of validity of pain, the Waddell test and the Korbon test. Plaintiff passed only 14 of 31 validity profile indicators and exhibited poor effort.
15. In January 1999, plaintiff requested a change of physicians and treatment to North Carolina Baptist Hospital Pain Control Center. Special Deputy Commissioner Gina Cammarano denied plaintiff's motion on February 12, 1999. Neither party appealed this Order and plaintiff was not entitled to receive treatment at North Carolina Baptist Hospital Pain Control Center.
16. Plaintiff continued to receive treatment from Dr. Meloy at Piedmont Pain Clinic. Dr. Meloy suggested a myeloscopy evaluation. Dr. Daubert did not agree with this recommendation. Dr. Daubert was the primary treating physician and had evaluated plaintiff over the course of a lengthy period of time. Dr. Daubert's recommendation regarding treatment were the approved course of treatment for plaintiff.
17. Dr. Meloy indicated upon reviewing the functional capacity evaluation of 1998 that he would be hesitant to undertake additional treatment.
18. In May 1999, plaintiff was evaluated by Jerry Noble, a psychologist. This evaluation was at the direction of plaintiff's counsel and not referred by any of the authorized health care providers in this case.
19. On May 27, 1999, plaintiff returned to Dr. Daubert at which time he ordered a third MRI. The MRI taken on June 11, 1999 showed a mild disc bulge at L5-S1. This was a new finding and was not present at the prior two MRI's. Dr. Daubert indicated this disc bulge is not causally related to plaintiff's February 1, 1997 accident. Dr. Daubert continued to be of the opinion that plaintiff's condition was non-surgical.
20. In July 1999, plaintiff filed a motion with the Industrial Commission requesting authorization for psychological treatment with Dr. Noble and requesting her treating physician be changed from Dr. Daubert to Dr. Linville.
21. On August 3, 1999, plaintiff's request to change treating physicians to Dr. Linville was approved by the North Carolina Industrial Commission. Psychological treatment with Dr. Noble was not approved and neither party appealed this Order.
22. Upon authorization from Deputy Commissioner Holmes, plaintiff's care was transferred to Dr. Linville. Dr. Linville examined plaintiff on August 24, 1999 and agreed plaintiff did not have an operative condition. Dr. Linville also indicated plaintiff did not have a disc herniation or nerve compression. Dr. Linville's only recommendation for plaintiff was participation in a functional restoration program at Baptist Medical Center.
23. Plaintiff entered the functional restoration program at Baptist Medical Center under the care of Scott Spillmann, M.D., a physiatrist. Plaintiff was to participate in the program full time for several weeks. Defendants paid for this program and total disability compensation was paid during her participation in the program.
24. Plaintiff refused to cooperate with treatment while in this program. Dr. Spillmann directed the functional restoration program with the assistance of a psychologist, a physical therapist and rehabilitative nurse.
25. Plaintiffs refusal to participate in the prescribed treatment by the treating physician she had requested is unjustified. Plaintiff discharged herself from the program on October 22, 1999.
26. Upon discharging plaintiff from the program at her request, Dr. Spillmann rated plaintiff at a zero percent permanent partial disability impairment to her back. Dr. Spillmann made no further recommendation in regards to treatment and indicated plaintiff could return to work with no restrictions.
27. Plaintiff returned to Dr. Linville on November 23, 1999. Dr. Linville agreed plaintiff had zero percent permanent partial disability rating to her back. Dr. Linville has made no recommendation in regards to any further additional treatment.
28. Dr. Linville agreed plaintiff could perform her job duties as receptionist or as a file clerk.
29. Plaintiff has not received any additional medical treatment since January 2000.
30. Plaintiff's assertions she is experiencing ongoing difficulties with her back is not supported with any credible medical evidence.
31. Plaintiff has received significant medical treatment at the recommendations of her treating physicians. Dr. Linville and Dr. Daubert have made no additional treatment recommendations.
32. Plaintiff sustained a zero percent permanent partial disability to her back as result of her February 1, 1997 accident.
33. Plaintiff has been working full time as a receptionist/file clerk since October 1998. These jobs have been approved by plaintiff's treating physicians. The receptionist position and the file clerk position are suitable employment within plaintiff's restrictions.
34. Since plaintiff last received temporary disability compensation or temporary partial disability compensation, plaintiff's wages have been greater than the wages she earned at the time of her injury by accident.
35. Although plaintiff missed sporadic days from work since October 1998, these days were not excused by any of her treating physicians.
36. Plaintiff is not entitled to additional compensation payments.
37. Based upon the greater weight of the evidence, plaintiff is not permanently and totally disabled.
38. Defendants have not defended this action without merit.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident on February 1, 1997 which was accepted as compensable by defendants. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to a presumption of disability until she returns to work earning the same or greater wages at the time of her injury by accident as result of her compensable injury by accident.Brown v. SN Communications, Inc., 124 N.C. App. 320, 477 S.E.2d 197(1996);Watson v. Central Motor Lines, 279 N.C. 132, 181 S.E.2d 588(1971).
3. Plaintiff has received total disability compensation and temporary partial disability compensation benefits through October 1998. As of October 1998, plaintiff has been fully capable of earning the same or greater wages as she earned at the time of her injury by accident through suitable employment provided by defendants. Plaintiff is not entitled to additional total disability compensation or temporary partial disability compensation benefits. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-30; N.C. Gen. Stat. § 97-32.
4. Plaintiff has received appropriate medical treatment in regards to her compensable injury by accident on February 1, 1997. N.C. Gen. Stat. § 97-25.
5. Plaintiff has failed to prove by the greater weight of the evidence that any additional medical treatment is necessary at this time. N.C. Gen. Stat. § 97-25.
6. Plaintiff is not permanently and totally disabled as a result of her compensable injury by accident on February 1, 1997. N.C. Gen. Stat. § 97-29.
7. Plaintiff has sustained no permanent partial disability impairment as result of her injury by accident on February 1, 1997. N.C. Gen. Stat. § 97-31.
8. Defendants have not defended this case without merit. N.C.G.S. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's request to receive additional treatment relating to her compensable injury by accident is DENIED.
2. Plaintiff is not entitled to further disability benefits relating to her compensable injury by accident on February 1, 1997.
3. Plaintiff is not entitled to any permanent partial disability compensation.
4. Each side shall bear its own costs.
This 1st day of October 2001.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________ RENE C. RIGGSBEE COMMISSIONER