***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer at all relevant times herein.
3. At all times relevant to this proceeding, one of either defendant-carrier American Motorists Insurance Company/Kemper Insurance Company or defendant-carrier EBI Companies insured the defendant-employer, pursuant to the requirements of N.C. GEN. STAT. § 97-93. American Motorists Insurance Company/Kemper Insurance Company insured the defendant-employer from January 1, 1997 through December 31, 1997 and defendant-carrier EBI Companies insured the defendant-employer from January 1, 1998 to December 31, 1998.
4. The parties stipulated that the plaintiff's average weekly wage was $472.94, yielding a compensation rate of $316.18.
5. The parties stipulated to Industrial Commission Forms 19, 33 and 33R; a letter from Lundy Packing Company, Inc. dated June 24, 1998 and the fact that the plaintiff filed a prior workers' compensation claim.
6. The parties stipulated to the plaintiff's medical records from Paul E. Viser, M.D., Raleigh Neurosurgical Clinic, Inc., Wake Medical Center, Laura A. Jozewicz, M.D., Wayne Neurological Associates, The Bone and Joint Surgery Clinic, and Goldsboro Orthopaedic Associates, P.A.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing, the plaintiff-employee was 61 years old and had completed the 7th grade. The plaintiff-employee worked for the defendant-employer for approximately 25 years as a process boner, trimmer and puller in the defendant-employer's boning department.
2. The plaintiff-employee is right-hand dominant.
3. The plaintiff-employee's job duties included the manual cutting of pieces of meat with a knife. Using a knife held in his right hand, the plaintiff-employee would remove bones from pieces of meat, and discard the bones. Working at peak efficiency, the plaintiff-employee processed as many as 250 pounds of meat per hour. The plaintiff-employee wore a wire mesh glove on his left hand.
4. In addition to the above-described job duties, the plaintiff-employee spent virtually his entire work day, exclusive of two fifteen-minute breaks and one thirty-minute break, standing on a cement floor, in a work environment with a controlled temperature of between 38 and 40 degrees.
5. In 1996, the plaintiff-employee developed a degenerative condition in his lower back resulting from a gunshot wound that he sustained during an altercation with an officer of the North Carolina State Highway Patrol. In 1997, the plaintiff-employee was diagnosed with degenerative disc disease in his cervical spine, and has been receiving ongoing treatment for that condition ever since.
6. In 1997, the plaintiff-employee began experiencing difficulties with his left hand, including numbness, tingling and weakness. Throughout 1997, the plaintiff-employee continued to work at his regular job duties while undergoing treatment for his left hand difficulties with Dr. Paul E. Viser, the plaintiff-employee's primary care physician, Dr. Samuel K. St. Clair, a neurosurgeon, Dr. Laura K. Jozewicz, a neurologist and Dr. Paul B. Burroughs, Jr., an orthopaedic surgeon. The plaintiff-employee lost no compensable time from work until Dr. St. Clair recommended and subsequently performed left-sided carpal tunnel release surgery on January 26, 1998.
7. As a result of the carpal tunnel release surgery, the plaintiff-employee did not work from January 26, 1998 to March 15, 1998, when he returned to work at his full wages, and essentially performing the same job duties that he had performed prior to his surgery.
8. In April of 1998, the plaintiff-employee began efforts to collect benefits in connection with an early retirement program offered by the defendant-employer. In April of 1998, the plaintiff-employee requested and was provided a disability evaluation form, which Dr. Viser completed and signed.
9. In May of 1998, the plaintiff-employee missed time from work due to a family vacation. This lost time was completely unrelated to any injuries or disability that the plaintiff-employee sustained in the course of his employment with the defendant-employer.
10. The disability form indicates that Dr. Viser certified the plaintiff-employee as permanently and totally disabled due to his above-described low back injury and chronic low back pain. This disability explanation form is dated April 14, 1998.
11. By letter dated June 24, 1998, the defendant-employer informed the plaintiff-employee that he qualified for the above-described disability benefit distribution plan. The plaintiff-employee was accordingly released from his employment with the defendant-employer on June 26, 1998.
12. The plaintiff-employee has not returned to work for the defendant-employer, nor has he returned to work any other employer since June 26, 1998.
13. On January 8, 1998, the defendant-employer filed an Industrial Commission Form 19, which noted that the plaintiff-employee injured his left wrist and complained of pain in the left wrist following the performance of his normal job duties.
14. Dr. St. Clair testified that the plaintiff-employee could return to work at the same position that he held prior to the left-sided carpal tunnel release surgery. Dr. St. Clair opined that he did not know whether or not the plaintiff-employee's symptoms in his left hand had worsened or augmented at any time from January 1, 1998 to January 26, 1998.
15. Dr. Laura K. Josewicz treated the plaintiff-employee for both right-sided and left-sided carpal tunnel syndrome. Dr. Josewicz offered no testimony indicating that the plaintiff-employee is permanently and totally disabled as the result of any disabling condition. Dr. Josewicz further indicated that she did not see or examine the plaintiff-employee during the period of time from January 1, 1998 to January 26, 1998, and thus could not comment on his condition during that span of time.
16. Dr. St. Clair referred the plaintiff-employee to Dr. Paul B. Burroughs, Jr., who evaluated and treated the plaintiff-employee on November 18, 1997. Dr. Burroughs testified that initial radiographs taken of the left hand showed changes in the navicular bone, which "appeared to be consistent with an old injury of some kind, possibly a fracture." Dr. Burroughs further testified that a prior fracture of the navicular bone could lead to the development of symptoms commonly associated with carpal tunnel syndrome. Dr. Burroughs further testified that he was unfamiliar with the nature of the plaintiff-employee's job duties with the defendant-employer and thus could not comment on the actual cause of the plaintiff-employee's symptoms in the left hand. Dr. Burroughs offered no testimony to support the premise that the plaintiff-employee is permanently and totally disabled as a result of any medical condition, and he offered no testimony with respect to the degree of increase or decrease in the plaintiff-employee's symptomatology in his left hand during the period of time between January 1, 1998 and January 26, 1998.
17. Dr. Paul E. Viser, the plaintiff-employee's primary care physician, testified that he completed and signed the Disability Explanation Form on April 14, 1998. Dr. Viser opined that at the time that he completed this Disability Explanation Form, that the plaintiff-employee was permanently and totally disabled as a result of his chronic low back pain. Dr. Viser offered no testimony with respect to any increase, decrease or change in the plaintiff-employee's symptomatology in his left hand during the period of time from January 1, 1998 to January 26, 1998.
18. The Disability Explanation Form indicates that the plaintiff-employee's left-sided carpal tunnel syndrome was not a contributing factor in the plaintiff-employee's overall level of disability on April 14, 1998. Further, the plaintiff-employee sought and received early retirement benefits from the defendant-employer and was released from his employment on June 26, 1998 based on the aforementioned certification of disability by Dr. Paul Viser, which did not include left carpal tunnel syndrome as a causative or contributing factor.
19. In this case, although the plaintiff-employee testified at the hearing that his left-sided carpal tunnel symptoms worsened during the period of time from January 1, 1998 to January 26, 1998, during which period of time the defendant-carrier EBI Companies was the provider of workers' compensation insurance coverage for the defendant-employer, the competent evidence in the record of this matter contains no evidence to indicate that any such augmentation of the plaintiff-employee's left carpal tunnel syndrome occurred during the period of time that the defendant-carrier EBI Companies was on the risk. Accordingly, the plaintiff-employee's assertions at the hearing of this matter are uncorroborated by any medical evidence.
20. The plaintiff-employee's left-sided carpal tunnel syndrome completely resolved and caused the plaintiff-employee no further difficulties and did not constitute or contribute to any combined effect of the totality of the plaintiff-employee's condition rendering him permanent and totally disabled. The competent evidence in the record fails to establish that the plaintiff-employee is permanently and totally disabled as defined in N.C. GEN. STAT. § 97-29.
21. The plaintiff-employee prosecuted this matter with reasonable grounds.
22. None of the defendants in this matter defended this claim without reasonable ground or based on stubborn and unfounded litigiousness.
 ***********
Based on the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. In March 1997, the plaintiff was diagnosed with carpal tunnel syndrome on the left side, which is the claimed disability relevant to this proceeding. Pursuant to N.C. GEN. STAT. § 97-53(13) and interpretative case law, an occupational disease such as carpal tunnel syndrome is compensable if an employee's work activities expose that employee to a greater risk of contracting the occupational disease in question than the risk shared by the general public. The employee must also demonstrate a causal connection between the occupational disease in question and the employment. Rutledge v. Tultex Corp., 308 N.C. 85,301 S.E.2d 359 (1983). The plaintiff has demonstrated that his diagnosed left-sided carpal tunnel syndrome constitutes an occupational disease in accordance with the requirement of N.C. GEN. STAT. § 97-53(13).
2. As a proximate result of the plaintiff's compensable occupational disease of left-sided carpal tunnel syndrome, the plaintiff was temporarily totally disabled from January 26, 1998, when he underwent left-sided carpal tunnel release surgery, to March 16, 1998, when he returned to work. The plaintiff is entitled to temporary total benefits of $316.18 per week beginning January 26, 1998 and continuing until March 16, 1998.
3. When the existence of a disability is proven by a compensable injury. a plaintiff enjoys a presumption of continuing disability until he returns to work at his pre-injury wages or the employer and/or workers' compensation insurance carrier produce evidence that effectively rebuts the plaintiff's presumption of disability. Watkins v. CentralMotor Lines, Inc., 279 N.C. 132, 181 S.E.2d 588 (1971).
4. The competent evidence in the record establishes that the plaintiff returned to work on March 6, 1998 at his regular job, earning his pre-injury wages. Accordingly, the defendants have effectively rebutted the plaintiff's presumption of disability as of March 16, 1998.
5. The plaintiff is entitled to medical treatment, including treatment that the plaintiff received from Dr. St. Clair, Dr. Jozewicz, Dr. Viser and Dr. Burroughs, relating to the plaintiff's left-sided carpal tunnel syndrome which was reasonably required to effect a cure, give relief, or lessen the plaintiff's disability from his compensable occupational disease.
6. There is no medical evidence whatsoever in the record of this matter to suggest that the plaintiff is permanently or totally disabled as defined in N.C. GEN. STAT. § 97-29. This case is distinguishable from McKenzie v. McCarter Electric Co., 86 N.C. App. 619, 359 S.E.2d 249
(1987), where the North Carolina Court of Appeals held that a plaintiff was entitled to recover for permanent and total disability, because the combined effect of all of the plaintiff's injuries caused permanent and total disability. In this case, the plaintiff's left carpal tunnel syndrome resolved completely and caused him no further difficulties, as indicated in the stipulated medical records, and Dr. Viser certified the plaintiff as permanently and totally disabled based on conditions wholly unrelated to and independent of the plaintiff's left carpal tunnel syndrome.
7. Neither the defendant-employer nor the defendant-carrier Kemper nor defendant-carrier EBI Companies defended this matter without reasonable ground, nor did the defendant-employer nor the defendant-carrier base its defense of this claim on stubborn or unfounded litigiousness. Because the defendant-employer and the defendant-carriers defended this matter with reasonable ground, the plaintiff is not entitled to recover attorney fees under N.C. GEN. STAT. § 97-88.1.
8. Pursuant to N.C. GEN. STAT. § 97-57, "[i]n any case where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, which was on the risk when the employee was so last exposed under such employer, shall be liable." If the exposure to the relevant occupational disease is such that it augments the disease process to any degree, the defendant-carrier on the risk during the period of that exposure is liable. Gay v. J. P.Stevens, Co., 79 N.C. App. 324, 339 S.E.2d 490 (1986).
9. Because the record of this matter does not support the premise that the plaintiff's left-sided carpal tunnel syndrome was augmented to any extent during the period of time when the defendant-carrier EBI Companies provided workers' compensation insurance for the defendant-employer, defendant-carrier Kemper is liable for temporary total disability benefits and medical expenses proximately resulting from the plaintiff's compensable occupational disease of left carpal tunnel syndrome.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorneys fee the defendant-employer and defendant-carrier American Motorists Insurance Co./Kemper Insurance Co. will pay the plaintiff temporary total disability benefits as a result of his compensable occupational disease, at a rate of $316.18 per week from January 26, 1998 through March 16, 1998. Compensation due which has accrued shall be paid to the plaintiff in a lump sum, subject to the attorney's fees hereinabove provided.
2. The defendant-employer and defendant-carrier American Motorists Insurance Co./Kemper Insurance Company shall render payment for all medical treatment and care previously incurred as a result of the plaintiff's compensable occupational disease.
3. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff under Paragraphs 1 of this Award is hereby approved to be paid directly to plaintiff's counsel by the defendant-employer and defendant-carrier American Motorists Insurance Co./Kemper Insurance Co.
4. Defendants shall pay the costs.
 S/_____________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________________________ RENEE C. RIGGSBEE COMMISSIONER
S/_____________________________ THOMAS JEFFERSON BOLCH COMMISSIONER