***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Dollar, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award, except for minor modifications. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner on 6 November 2002 as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Hartford Insurance Company was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The date of the occupational disease giving rise to this claim is 4 March 1996.
5. Plaintiff's average weekly wage was $655.76, which yields a compensation rate of $437.20.
6. Defendants accepted this claim as compensable and have paid temporary total and temporary partial disability benefits to plaintiff until 18 September 2001.
7. The issues for determination are:
a. Did plaintiff's depression result from her compensable injury?
b. Is plaintiff entitled to additional indemnity benefits as a result of the depression?
c. Are defendants required to pay for treatment recommended by Dr. Samuel Moon?
8. The parties stipulated the following documents into evidence:
a. Medical Records, 201 pages, and
b. Vocational Records, 34 pages.
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a forty-seven year old married female high school graduate. She began working for the defendant-employer in August of 1979.
2. In approximately 1995, plaintiff began experiencing symptoms with her arm. On or about 4 March 1996, she was diagnosed with carpal tunnel syndrome. Dr. J. Stovall King performed left carpal tunnel release surgery in November of 1996 and right carpal tunnel release surgery in January of 1997. Following a brief return to work, plaintiff underwent additional bilateral release surgeries in April of 1998.
3. After the additional surgeries, plaintiff was placed on light duty restrictions that the defendant-employer was unable to accommodate. Defendants provided vocational rehabilitation services to assist plaintiff to obtain suitable work.
4. On 7 May 1999, defendants filed an I.C. Form 28T, Notice of Termination for Compensation, due to plaintiff's trial return to work.
5. Plaintiff worked at Brewer's Convenience Store for approximately one year. She decided to leave this job after they assigned her mopping, pricing and other duties which were outside of her restrictions.
6. From 8 May 2000 through the Fall of 2001, plaintiff worked for Don Thomas Construction and Trucking. This employer was not aware of plaintiff's restrictions when she was hired. Plaintiff was initially hired through an acquaintance to answer the telephone, but was later promoted to accounts receivable, where her duties included data entry on a computer keyboard, writing, answering the telephone, billing and payroll, and general typing.
7. On 28 March 2001, Dr. Robert Sypher of the Hand Center of Greensboro evaluated plaintiff after referral by Dr. Moon. In May of 2001, she underwent left arm pronator release surgery. She received workers' compensation benefits, including temporary total disability payments and payment of medical expenses until she was released to return to work.
8. Plaintiff has reached maximum medical improvement from the pronator release surgery. She retains a nineteen percent impairment to her left arm as a result of this surgery and her occupational disease.
9. As of August of 2001, Dr. Moon restricted plaintiff to limited intensive writing and typing, allowance of micro breaks every twelve minutes, use of ergonomic tools, including a telephone headset and electric stapler. Plaintiff took these restrictions to her employer, Don Thomas Construction, and requested they purchase equipment for her. She was advised that she could purchase the equipment on her own.
10. On 10 September 2001, Dr. Moon referred plaintiff to her family doctor, Dr. Todd Granger, for treatment of depression. Dr. Moon had no opinion as to the cause of plaintiff's depression. As Dr. Granger treated plaintiff for a number of conditions, there is no competent evidence to support a finding that plaintiff's depression was due to her compensable occupational disease.
11. After plaintiff began having increased absenteeism, the employer advised plaintiff that since they were a small employer with only two to three office employees, it was difficult to accommodate her absences. After a discussion of the issue, they mutually decided it was in their respective best interests for plaintiff to leave the job, which she did in the Fall of 2001.
12. Plaintiff has not sought work since the end of the Thomas' job. She did contact North Carolina Vocational Rehabilitation for assistance in obtaining additional work in September of 2001, but did not follow-up. Although plaintiff contends she is unable to seek work due to driving limitations, there is no medical evidence that she has any driving restriction.
13. The greater weight of the medical evidence in the record fails to establish a causal relationship between plaintiff's occupational disease and her depression. In fact, Dr. Moon declined to state an opinion as to the cause of the condition.
14. There is no evidence plaintiff filed an I.C. Form 28U within the nine months of her trial return to work on 7 May 1999.
15. Based upon the competent medical evidence in the record, plaintiff retains a nineteen percent (19%) permanent partial impairment to her left arm as a result of her compensable occupational disease.
16. Based upon the competent medical evidence in the record, plaintiff retains an eight percent (8%) permanent partial impairment to her right arm as a result of her compensable occupational disease.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and the extent of disability. Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682
(1982). "If an award is made by the Industrial Commission, payable during disability, there is a presumption that disability lasts until the employee returns to work. . . ." Watkins v. Central Motor Lines,279 N.C. 132, 181 S.E.2d 588 (1971). However, as stated in Commission Rule 404(1), this presumption of continued disability is rebuttable.Stone v. G. G. Builders, 346 N.C. 154, 484 S.E.2d 365 (1997). In the instant case, the defendant has successfully rebutted the presumption of continued disability by showing that suitable work was available for plaintiff; and she worked for that employer for approximately one year, well in excess of the nine-month trial return to work period. N.C. Gen. Stat. § 97-32.1. Although I.C. Rule 404A provides a mechanism by which an employee may indicate a trial return to work as being unsuccessful, such was not the case here. Further, plaintiff obtained additional office work on her own and was able to perform that job for an additional year.
2. Plaintiff is not entitled to additional temporary total disability compensation. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to permanent partial disability compensation at the rate of $437.20 per week for 45 and 4/7 weeks as a result of the nineteen percent rating to the left arm. N.C. Gen. Stat. § 97-31(13).
4. Plaintiff is entitled to permanent partial disability compensation at the rate of $437.20 per week for 19 and 1/7 weeks as a result of the 8 percent rating to the right arm. N.C. Gen. Stat. § 97-31(13)a.
5. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-2(19). However, there is no competent medical evidence to establish that plaintiff's depression was due to her carpal tunnel syndrome. Therefore, defendants are not liable for treatment of depression.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay permanent partial disability compensation at the rate of $437.20 per week for 64 and 5/7 weeks.
2. Plaintiff's claim for additional temporary total disability benefits is, and under the law must be, Denied.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel.
4. Defendants shall pay related medical expenses incurred or to be incurred in accordance with the provisions of the Act.
5. Defendants shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ PAMELA T. YOUNG COMMISSIONER