***********
Upon review of all of the competent evidence of record with references to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the parties on March 23, 2000.
3. Transcontinental Insurance Company was the carrier on the risk.
4. On March 23, 2000, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendants. As the result of plaintiff's compensable injury, plaintiff sustained injury to his neck.
5. Plaintiff was out of work from April 17, 2000 through May 21, 2000 and received temporary total disability during that time. Plaintiff returned to work for defendants on May 22, 2000 and worked until November 27, 2002.
6. The last medical payment was issued on December 14, 2000.
7. The last entry on page one of Stipulated Exhibit # 3 shows a replacement check that was issued to plaintiff on May 17, 2001 in the amount of $400.88 for mileage.
8. The parties stipulated into evidence the following:
a. Packet of medical records and reports.
b. Form 22 wage chart.
c. CNA payment records.
d. Letter from Katherine Davis to CNA Insurance Company dated April 11, 2002 with a check attached.
e. Form 28B dated August 10, 2001.
f. Faxed letter dated November 26, 2002 from plaintiff's former attorney, Mr. Huggins, to the insurance company.
g. Form 33 filed February 28, 2003.
h. Form 33R dated May 16, 2003.
i. Amended Form 33R filed August 19, 2003.
j. UM Release and Trust Agreement dated September 6, 2001, which were submitted after the Deputy Commissioner's hearing.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was fifty-seven years old at the time of the hearing before the Deputy Commissioner and a high school graduate. Plaintiff completed community college courses in surveying and welding. Plaintiff's primary work experience has been in the construction field. In approximately 1989, plaintiff began working for defendants, a company that installs water and sewer pipelines. Plaintiff's job involved driving trucks, backhoes, motor graders and other heavy equipment, although he performed other tasks as requested.
2. On March 23, 2000, plaintiff sustained a compensable injury by accident when a vehicle ran through traffic cones and collided with the rear of the backhoe plaintiff was operating. Plaintiff initially experienced pain in his wrists and knees but did not seek medical attention right away. Since the accident occurred on the last day of the workweek, plaintiff drove home. When plaintiff arrived at home, his neck was in so much pain that his wife immediately took him to the emergency room. At the hospital, plaintiff complained of neck and low back pain. He was treated with medication. On Monday, March 27, 2000, plaintiff returned to light duty work, as proscribed by the emergency room physician.
3. On April 14, 2000, plaintiff was seen at Dillon Family Medicine. Plaintiff complained of pain in his neck radiating to his right shoulder and to his upper thoracic spine area. He also had muscle spasms. Dr. Brown examined plaintiff and recommended cervical traction. Dr. Brown took plaintiff out of work as of April 17, 2000. On April 26, 2000, Dr. Brown examined plaintiff. Plaintiff still had neck and upper back pain, sometimes running down both arms, as well as muscle spasms in his cervical and thoracic spine. Dr. Brown ordered a CT scan and referred plaintiff to Dr. Dale Nodrick, a chiropractor.
4. On April 27, 2000, Dr. Nodrick evaluated plaintiff. Plaintiff's primary complaints were of neck and mid-dorsal pain radiating to his head and his right shoulder and arm. Plaintiff also mentioned intermittent low back pain. Dr. Nodrick recommended chiropractic treatment, which he provided for the next six months. Plaintiff was able to return to work on May 22, 2000, but in a light duty capacity. Plaintiff drove a truck, supervised a crew, put up signs and mailboxes, and made sure that homeowners' yards were reseeded. However, he did not drive heavy equipment at that time.
5. On June 9, 2000 after receiving approximately six weeks of chiropractic treatment, plaintiff saw Dr. Brown. Plaintiff's back and neck pain were much better and he had good range of motion. Consequently, Dr. Brown kept plaintiff at light duty for another week and then released him from medical care.
6. Dr. Nodrick continued to provide plaintiff periodic chiropractic treatment. Plaintiff experienced a flare-up of pain in his neck and trapezius area in late July 2000. Dr. Nodrick referred plaintiff to Dr. Rakesh Chokshi, an orthopedic surgeon. On August 16, 2000, Dr. Chokshi examined plaintiff and noted that plaintiff complained of persistent pain in his neck, right arm and shoulder, with occasional headaches. Plaintiff did not report low back symptoms. Dr. Chokshi ordered an MRI of plaintiff's cervical spine. On April 22, 2000, plaintiff returned to Dr. Chokshi's office. The MRI demonstrated degenerative disc disease and mild disc bulging at C5-6 and C6-7. Dr. Chokshi recommended conservative treatment including epidural steroid injections. No medical records were submitted into evidence that showed that plaintiff ever received the injections recommended.
7. Plaintiff continued to receive chiropractic treatment from Dr. Nodrick and continued to complain of pain, especially after a hard week at work. Plaintiff began gradually increasing his work duties. On November 3, 2000, Dr. Nodrick concluded that plaintiff should return to Dr. Chokshi because of persistent symptoms in his neck, upper back and mid back. On November 8, 2000, plaintiff had an appointment with Dr. Chokshi. Plaintiff complained of right shoulder pain and Dr. Chokshi recommended epidural injections. Plaintiff did not return to Dr. Chokshi, or to Dr. Nodrick as he had been instructed. For the next two years, plaintiff received no medical treatment for his neck and back. The evidence did not establish why plaintiff stopped receiving medical care.
8. Defendants admitted liability under the Workers' Compensation Act for plaintiff's accident pursuant to a Form 60, which was submitted to the Industrial Commission. Defendants paid plaintiff's medical expenses, including bills from Dr. Chokshi. Defendants also paid compensation to plaintiff for temporary total disability benefits from April 17, 2000 through May 21, 2000. On August 8, 2001, the adjuster completed a Form 28B stating that final payments had been made in the case for both compensation and medical expenses. This form was filed approximately nine months after plaintiff last received medical treatment. The carrier last paid for treatment in December 2000, when one of Dr. Chokshi's bills was paid. Defendants also issued a duplicate check to plaintiff in May 2001 to cover mileage expenses because plaintiff had not cashed an earlier check.
9. Plaintiff continued to work for defendants, who valued him as a good employee. Although he continued to be a crew foreman, plaintiff resumed his more active duties of driving heavy equipment and trucks. Plaintiff often earned extra money by delivering equipment from one job site to another and by occasionally working on the farm owned by one of the company's owners. During the two years after he last saw Dr. Nodrick, plaintiff did not complain of pain associated with the injury, although he did mention general aches and pains, especially in cold weather. Plaintiff's complaints of pain to his supervisor were consistent with the type of complaints experienced by other employees who were in plaintiff's age bracket. Plaintiff's supervisor, who saw and spoke with plaintiff on a daily basis, was unaware of any ongoing problems plaintiff had that were associated with the May 23, 2000 accident.
10. On or about November 22, 2002 as he was operating a backhoe, plaintiff developed the onset of low back pain which went down his left leg. The pain became so severe that plaintiff went to Dr. Nodrick later that day. Dr. Nodrick noted that plaintiff reported that the pain started on November 14, 2002 as plaintiff was driving. On November 25, 2002, Dr. Nodrick recommended that plaintiff stay out of work. On November 27, 2002, x-rays taken showed signs of early degenerative disc disease in the lumbar spine. Dr. Nodrick gave plaintiff chiropractic treatment until December 2, 2002.
11. On November 27, 2002 plaintiff called defendant-employer's office and advised the secretary that he would not be coming back to work. Plaintiff thought Dr. Nodrick told him that he had a cracked vertebra and that if he aggravated it, he would risk being in a wheelchair. Consequently, plaintiff did not consider doing a light duty job when offered one later in December 2002.
12. After receiving treatment from Dr. Nodrick on December 2, 2002, plaintiff saw Dr. Thomas Florian on December 17, 2002. Dr. Florian ordered an MRI of the lumbar spine, which showed degenerative disc disease and a bulging disc at L2-3 that was compromising the neuroforamin. When plaintiff returned to Dr. Florian's office on January 30, 2003, Dr. Florian recommended an epidural injection. On February 3, 2003, the nerve root block was performed, which gave plaintiff relief from the leg pain. Dr. Florian next examined plaintiff on February 10, 2003 and was of the opinion that plaintiff's presentation was not very physiologic. Dr. Florian ordered two weeks of physical therapy, followed by a functional capacity evaluation.
13. Plaintiff underwent the functional capacity evaluation on March 11 and 12, 2003. During the test, plaintiff was argumentative, uncooperative and gave inconsistent effort. Alisha Galeana, the physical therapist who performed the test, was unable to give plaintiff a work rating. Plaintiff told Ms. Galeana that his bad attitude was due to the fact that he was still mad at the "punk" who had driven into his backhoe and "ruined his life."
14. Following the functional capacity evaluation, plaintiff did not return to Dr. Florian. Plaintiff's former attorney sent him to Dr. Anthony G. Hucks-Folliss, a neurosurgeon, who examined him on June 17, 2003. Plaintiff did not give the doctor an accurate medical history. On examination, Dr. Hucks-Folliss found no evidence of nerve root irritation in plaintiff's neck or lumbar spine but did find severe muscle spasm in the low back. Dr. Hucks-Folliss believed plaintiff had persistent neck pain based on soft tissue injury, degenerative disc disease in his neck and some in his lumbar spine, as well as a sustained back strain with persistent soft tissue complaints. Dr. Hucks-Follis felt that plaintiff needed more medical treatment for his low back condition and that he was still not able to drive heavy equipment. Since plaintiff had not reached maximum medical improvement, Dr. Hucks-Folliss did not give plaintiff a permanent partial disability rating.
15. Plaintiff's only other medical examination was by Dr. William Sutton, who examined him at defendants' request after the Deputy Commissioner's hearing. On December 30, 2003, Dr. Sutton diagnosed plaintiff with low back pain and cervical pain, including strain and degeneration of plaintiff's cervical spine. Dr. Sutton stated plaintiff was at maximum medical improvement for the conditions he had as of December 2003. Dr. Sutton felt plaintiff had about a five percent permanent partial disability rating to his back. Dr. Sutton hoped plaintiff would return to work in a medium or light duty capacity, with no specific restrictions other than not making repetitive demands on his neck. Based on his objective findings, Dr. Sutton felt plaintiff would be able to drive a truck or operate heavy machinery. Dr. Sutton thought that the back symptoms plaintiff experienced in November 2002 were not related to plaintiff's March 2000 injury.
16. After the incident in November 2002, plaintiff's attorney sent a letter to defendants and to the Industrial Commission advising that plaintiff had sustained a change of condition with respect to his earlier injury. No separate claim was filed or heard before the Deputy Commissioner regarding the second incident on November 22, 2002. Defendants denied liability for additional compensation on the November 2002 claim because more than two years had elapsed since their last payment of compensation to plaintiff. They also contested the causation of the symptoms plaintiff developed in November 2002.
17. Defendants last paid compensation to plaintiff in May 2000. Dr. Brown released plaintiff to return to regular work in June 2000. Although he continued to receive medical and chiropractic treatment until November 2000, plaintiff stopped going to any doctors in November 2000 and resumed full work duties. None of the doctors who treated plaintiff in 2000 rated him for permanent partial disability or noted that he would have any permanent partial disability as a result of his accident at work. Consequently, the Form 60 was a final award. Plaintiff did not reopen his claim until he filed the Form 33 request for hearing on February 28, 2003, which was not within two years of the date defendants last paid plaintiff compensation. Plaintiff was represented by counsel and there was no evidence of any misrepresentations by defendants that would have caused plaintiff to delay reopening his claim.
18. Plaintiff did not see a doctor for over two years before the second incident and only returned to Dr. Nodrick in November 2002 because he experienced the onset of severe pain in his low back and left leg. This pain was different from the type of pain plaintiff had been treated for in 2000 after his first injury. Plaintiff failed to prove by the greater weight of the evidence that this low back condition was causally related to the March 23, 2000 injury by accident. Consequently, even if plaintiff had reopened his claim within two years, he did not prove that he sustained a material change for the worse in the condition he suffered as a result of his accident on March 23, 2000.
19. In August 2001, plaintiff participated in a court ordered mediated settlement and agreed to settle his third party claim from the March 2000 injury in the amount of $16,000.00. The parties did not obtain an order from superior court concerning the amount of the lien. Monies from the settlement were distributed without an order from the Industrial Commission. On April 11, 2002, Katherine Davis, plaintiff's former attorney, wrote a letter to defendant-carrier indicating that plaintiff agreed to settle his workers' compensation case on a compromise basis, with defendants waiving their third party lien except for the sum of $666.67. A check for that amount was attached to the letter and was subsequently cashed by defendant-carrier.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff returned to work at his former average weekly wage within a couple of months after his March 23, 2000 injury, he was released to do regular work in June 2000, and there was no indication in plaintiff's medical reports that he might sustain any permanent partial disability. As such, the Form 60 filed in this case was a final award. N.C. Gen. Stat. § 97-82(b); Watkins v. Motor Lines, 279 N.C. 132, 181 S.E.2d 588
(1971).
2. The Industrial Commission shall not review any award of compensation on the grounds of a change in condition if the application for review is made two years after the date of the last payment of compensation. N.C. Gen. Stat. § 97-47. Plaintiff was last forwarded compensation from the March 23, 2000 injury by accident on May 16, 2000. Plaintiff did not reopen his claim until February 28, 2003 when he filed a Form 33. As such, plaintiff did not reopen his claim on a timely basis within two years of the date compensation was last forwarded to him for payment of temporary total disability pursuant to the Form 60. Id.
3. Defendants are not estopped to raise N.C. Gen. Stat. § 97-47 as a defense to this claim. Biddix v. Rex Mills, Inc., 237 N.C. 660,75 S.E.2d 777 (1953).
4. If a judgment or settlement is obtained by plaintiff in an action against a third party either party may apply to superior court to determine the subrogation amount. The superior court judge shall determine, in his discretion, the amount, if any, of the employer's lien. N.C. Gen. Stat § 97-10.2(j). In this case, the parties did not obtain an order from superior court determining the amount of the lien. Monies were distributed without an order from the Industrial Commission. By cashing the check for $666.67, defendants accepted the reduction of the lien. Id.; Zanone v. RJR Nabisco, Inc., 120 N.C. App. 768,463 S.E.2d 584 (1995) (cashing of a check tendered in full payment of a disputed claim establishes an accord and satisfaction as a matter of law and the claim is extinguished, regardless of any disclaimers which may be communicated by payee), disc. review denied, 342 N.C. 666, 467 S.E.2d 738
(1996).
5. Plaintiff's claim for further compensation is barred due to his failure to reopen his claim on a timely basis. N.C. Gen. Stat. § 97-47;Watkins v. Motor Lines, supra.
6. The condition for which plaintiff was treated beginning in November 2002 was not proven to be causally related to the injury by accident on March 23, 2000. Consequently, plaintiff would not be entitled to compensation or to medical compensation beginning at that time, even if he had reopened his claim on a timely basis. N.C. Gen. Stat. §§ 97-2(6);97-47; Click v. Freight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for additional workers' compensation benefits is hereby DENIED.
2. Each side shall pay its own costs.
This the 1st day of April 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER